UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 9:18-CV-81689-ROSENBERG/REINHART

CITYPLACE RETAIL, LLC, *a Foreign Limited Liability Company*,

    Plaintiff,

v.

WELLS FARGO BANK, N.A., *as Trustee for the Registered Holders of Credit Suisse First Boston Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 2007-C1*,

    Defendant.
_____/

### AGREED ORDER ON PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY AND PERMANENT MANDATORY INJUNCTIVE RELIEF

**THIS CAUSE** came before the Court on Plaintiff CITYPLACE RETAIL, L.L.C.'s ("Plaintiff/Borrower") Emergency Motion for Preliminary Mandatory Injunctive Relief [DE 14] against Defendant WELLS FARGO BANK, N.A., AS TRUSTEE FOR THE REGISTERED HOLDERS OF CREDIT SUISSE FIRST BOSTON MORTGAGE SECURITIES CORP., COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-C1 ("Defendant/Lender") (Plaintiff/Borrower and Defendant/Lender are collectively hereinafter referred to as the "Parties"). The Court, having reviewed the Motion and being otherwise fully advised in the premises, and the Parties being in agreement hereto prior to any determination of the Motion, it is hereby **ORDERED and ADJUDGED**:

1. Defendant/Lender is hereby ordered to provide a final payoff letter (the "Payoff Letter") to Plaintiff/Borrower on or before 3:00 p.m. EST, December 18, 2018, setting forth the amount

required to be paid by Plaintiff/Borrower to Defendant/Lender for the full and unconditional repayment of the Loan (as defined in paragraph 4 of the Complaint, and which, for clarity, is comprised of both Tranche A and Tranche B of the Loan as provided under the Loan Modification (as defined in paragraph 7 of the Complaint) [DE 1-2 at 3–4]), as of December 18, 2018, together with the per diem amount due for each day thereafter.[1] The amount set forth in the Payoff Letter for the full repayment of the Loan shall be calculated based on the accrued and unpaid interest, principal, and other outstanding amounts due with respect to Tranche A only, and the Parties agree that Borrower/Plaintiff shall not be required to pay Defendant/Lender any principal, interest, or other outstanding amounts which may otherwise be due with respect to Tranche B in order to repay the Loan (including those amounts outstanding as to Tranche B) in full. The Payoff Letter shall not contain any qualifications or contingencies and shall provide that, upon receipt by Defendant/Lender of the amount set forth therein, a) Plaintiff/Borrower shall be fully and unconditionally released from any and all obligations to Defendant/Lender with respect to the Loan, and b) Defendant/Lender shall no longer have any rights to, or security interests in, the Property (as defined in paragraph 4 of the Complaint) [DE 1-2 at 3] or any other collateral for the Loan, in recognition that all of Defendant/Lender's rights with respect to the Loan are to be assigned to the Refinancing Lender (defined below) pursuant to this Agreed Order.

2. The Parties are hereby ordered to close on the payoff of the Loan in accordance with the Payoff Letter, at the earliest possible date, but no later than December 26, 2018 (the "Closing

---

[1] The Payoff Letter shall also state the balances of all reserves and other funds of Plaintiff/Borrower being held on account with Defendant/Lender, which shall be credited against the amount owed by Plaintiff/Borrower under the Payoff Letter as provided herein, and retained and applied by Defendant/Lender to such payoff amount upon receipt of the balance of the payoff proceeds.

Date"), provided that in the event the Refinancing Lender shall fail to close on the New Loan (as defined in Section 4.9(f) of the Loan Modification) for any reason, the Parties agree that each Party reserves all rights and remedies, including requesting the Court to order the non-complying Party (if in the event that there is such a Party) to comply to the extent compliance is feasible.

3. The Parties are ordered to fully cooperate with each other and to execute and deliver any and all documents necessary to complete the payoff of the Loan in accordance with this Agreed Order. Plaintiff/Borrower has structured the payoff of the Loan as a refinance transaction, and therefore, Defendant/Lender shall execute and deliver to the closing agent for the refinance transaction (Shutts & Bowen LLP, 525 Okeechobee Boulevard, Suite 1100, West Palm Beach, Florida 33446, Attention: Adam I. Bregman, Esq.) all documents required to effectuate the assignment of the Loan to Plaintiff/Borrower's new lender (the "Refinancing Lender"), including, without limitation, original copies of those documents listed on Exhibit "A" attached hereto (collectively, the "Refinancing Documents").

4. The Maturity Date of the Loan shall be extended to the later to occur of a) the date on which the Maturity Date would occur pursuant to the terms of that certain Agreed Order in the State Court Action [DE 1-17], or b) the Closing Date.

5. Notwithstanding the repayment of the Loan in full and the assignment of the Loan to the Refinancing Lender as provided for in this Agreed Order (the "Closing"), the Parties' respective claims, rights and obligations under Sections 4.9 and 6.9 of the Loan Modification and any other provisions of the loan documents between the Parties which would enable the Court to make a determination in the Action, including, but not limited to, Section 5.9 of the 2017 Loan Reinstatement and Modification Agreement, are preserved and are not terminated

or waived as they relate to the appraisal issue, as set forth in an Agreement between the Parties dated December 18, 2018 (the "Agreement"), a copy of which is attached hereto as Exhibit "B". In accordance with that Agreement, this Court shall proceed to determine and enter a judgment with respect to all claims that the Parties may have and/or assert in connection with that Agreement (the "Judgment")[2]. For the avoidance of doubt, upon consummation of the Closing, the Loan shall be paid in full with respect to Plaintiff/Borrower's obligations to Defendant/Lender thereunder, and the Loan (together with all of the Loan Documents, including, without limitation, the Loan Modification) shall be fully assigned to the Refinancing Lender as provided for in this Agreed Order. Accordingly, nothing contained in this paragraph shall be construed to provide that, following Closing, Plaintiff/Lender will have any obligations or liabilities to Defendant/Lender, or that Defendant/Lender will have any claims or rights against Plaintiff/Borrower or to the Property, arising directly under the Loan or the Loan Documents, but rather any such obligations, liabilities, claims, or rights with respect to the Judgment shall arise under the Agreement.

6. The Related Companies, LP, a New York Limited Partnership ("TRCLP") and Defendant/Lender shall enter into that Guaranty attached hereto as Exhibit "C" (the "Post Closing Guaranty") under which TRCLP submits to the jurisdiction of this Court with respect to any Judgment, and which provides that TRCLP shall pay to Defendant/Lender any award to Defendant/Lender in the Judgment, including an amount equal to what would have been the principal, interest, and other outstanding amounts with respect to Tranche B that

---

[2] The Judgment is calculated as the net amount of any award/set-off Plaintiff/Borrower may be awarded.

would have been due to Defendant/Lender under Section 4.9(f) of the Loan Modification upon the closing of the New Loan if not for the terms of this Agreed Order, based solely on the Court's Appraisal Determination as to which Party, if any, is entitled to recovery, together with attorneys' fees and costs if applicable; provided, however that in no event shall TRCLP's obligations under the Post Closing Agreement exceed $6,400,000.00.

7. Defendant/Lender shall perform its obligations hereunder and pursuant to the Agreement as trustee for the Registered Holders of Credit Suisse First Boston Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 2007-C1, in accordance with the Pooling and Servicing Agreement dated as of March 1, 2007, among Credit Suisse First Boston Mortgage Securities Corp., Capmark Finance, Inc., Midland Loan Services, Inc. and Wells Fargo, N.A., the pertinent provisions of which the Defendant/Lender provided to Plaintiff/Borrower. Defendant/Lender acknowledges that an inducement for Plaintiff/Borrower to enter into this Agreed Order and the Agreement is its reliance on the understanding that no Registered Holder has the right to act unilaterally outside of the scope of this Agreed Order and the Agreement.

8. Following Plaintiff/Borrower's repayment of the Loan to Defendant/Lender as provided in this Agreed Order, a) all obligations of Plaintiff/Borrower to Defendant/Lender with respect to the Loan shall be fully satisfied, and b) all rights and claims of Defendant/Lender with respect to the Loan or the Property, whether arising under the Loan Documents or in connection with this action, shall be extinguished, but without prejudice to, i) Defendant/Lender's rights and claims with respect to any funds owing to Defendant/Lender under the Post Closing Agreement, or ii) any attorneys' fees and costs to be awarded to the prevailing party in this action.

9. Nothing containing herein shall be deemed a waiver of any of either Party's right to claim damages in this Action against Defendant/Lender, including, but not limited to, a) any damages suffered as a result of the actions of the other Party, and b) any attorneys' fees and costs to be awarded to the prevailing party in this action to the extent permitted under any loan documents between the Parties.

10. Any collection by Defendant/Lender against Plaintiff/Borrower for any award and/or judgment in favor of Defendant/Lender in the Action is limited exclusively to the Guaranty given by TRCLP and no lien, judgment and/or encumbrance by virtue of any award and/or judgment shall attach to any real and/or personal property of Plaintiff/Borrower, including, but not limited to, any and all security and/or collateral for the Loan.

11. In light of the above stipulation of the parties, Plaintiff/Borrower's Emergency Motion for Preliminary Mandatory Injunctive Relief [DE 14] is **DENIED AS MOOT**.

**DONE and ORDERED** in Chambers, West Palm Beach, Florida, this 18th day of December, 2018.

ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to Counsel of Record

# EXHIBIT "A"

# LIST OF CERTAIN REFINANCING DOCUMENTS

1. An original copy of an Assignment of Mortgage and Other Loan Documents executed by Defendant/Lender in favor of the Refinancing Lender (in a form required for recording in the Public Records of Palm Beach County, Florida).[1]

2. The original copy of that Increased Amended and Restated Renewal Promissory Note dated February 27, 2007, made by Plaintiff/Borrower in favor of Column Financial, Inc., a Delaware corporation (Defendant/Plaintiff's predecessor-in-interest) and evidencing the Loan (the "Promissory Note").

3. An original copy of such other notes as may be required by Refinancing Lender, or lost note affidavits with respect thereto to the extent original copies are not in the possession of Defendant/Lender.

4. An original copy of an Allonge endorsing the Promissory Note to the Refinancing Lender.

---

[1] The Assignment of Mortgage and Other Loan Documents shall be in a form sufficient for proper recording in the Public Records of Palm Beach County, Florida, and shall effectuate the assignment to the Refinancing Lender of all documents evidencing, securing, or otherwise pertaining to the Loan, including, without limitation, the Mortgage, Promissory Note, Loan Agreement, Loan Modification, Loan Reinstatement and Modification Agreement, Guaranty, Assignment of Leases and Rents, UCC-1 Financial Statements, and Environmental Indemnity, which shall all be listed in an exhibit thereto.

**EXHIBIT "B"**

**FORM OF POST CLOSING AGREEMENT**

(See Attached)

# AGREEMENT

This AGREEMENT; dated as of December 18, 2018, by and between Wells Fargo Bank, N.A., as trustee for the Registered Holders of Credit Suisse First Boston Mortgage Securities Corporation, Commercial Mortgage Pass-Through Certificates, Series 2007-C1 ("Lender"), and CityPlace Retail, L.L.C ("Borrower") (collectively, the "Parties").

**WHEREAS,** Lender (and its predecessors in interest) and Borrower entered into the Amended and Reinstated Loan Agreement, dated as of February 27, 2007 (the "2007 Agreement"), the Loan Modification Agreement, dated as of April 11, 2011 as amended and modified (the "2011 Agreement"), and the Loan Reinstatement and Modification Agreement, dated as of June 21, 2017 (the "2017 Agreement") (collectively, the "Loan Agreement");

**WHEREAS,** Borrower's obligation to repay the loan under the Agreements matured on December 11, 2018;

**WHEREAS,** a dispute arose between the parties with respect to determination of the Net Refinancing Proceeds pursuant to Section 4.9 of the 2011 Agreement, and Borrower commenced an action presently pending in the United States District Court for the Southern District of Florida (the "Court"), entitled CityPlace Retail, LLC v. Wells Fargo Bank, N.A. (Case No. 18-CV-81689) (the "Action");

**WHEREAS,** Lender and Borrower entered into an Agreed Order in the Action staying the maturity date of repayment of the loan;

**WHEREAS,** Borrower filed an Emergency Motion for Mandatory Preliminary Injunctive Relief, and Lender and Borrower have resolved that motion by entering into an Agreed Order (the "Order") enabling Borrower to refinance and repay the loan on the property in accordance with and subject to the terms of the Order;

**WHEREAS,** upon the payoff of the loan on or before December 26, 2018 in accordance with the Order, the Loan Agreements will be terminated; and

**WHEREAS,** notwithstanding termination of the Loan Agreements, Lender and Borrower have agreed that their respective claims, rights and obligations with respect to the Parties' performance under Section 4.9 of the 2011 Agreement, including determination of the Appraised Value for the purpose of determining Net Refinancing Proceeds under Section 4.9 of 2011 Agreement, shall not be terminated and shall be resolved in the Action.

**NOW, THEREFORE,** in consideration of the mutual covenants and promises contained herein, the sufficiency of which is hereby acknowledged and agreed, the Parties hereby covenant and agree as follows:

1. Section 4.9 of the 2011 Agreement is incorporated herein in all respects. The Parties each retain all claims that they may have now and in the future for damages and/or injunctive relief with respect to their respective rights under Section 4.9 of the 2011 Agreement. In connection with any adjudication of the all claims in accordance with Paragraph 2 of this

1

Agreement, the Parties and the Court may refer to or rely on any other provisions in the Loan Agreements to the extent the Parties or the Court deem that it is necessary or appropriate to refer to and rely on those provisions in order to render any determinations in the Action, including, but not limited to, the Notice provisions contained in the Loan Agreement.

2. The Parties agree that they will litigate exclusively in the Action any and all claims (legal and/or equitable) arising out of Section 4.9 of the 2011 Agreement, including the dispute regarding the process for the determination of the Appraised Value in accordance with Section 4.9(g) of the 2011 Agreement, any adjustment to the Net Refinancing Proceeds that may be necessary as result of the determination of the Appraised Value in accordance with any judgment issue in the Action and any damages to any Party relating to and/or arising out of the dispute. Notwithstanding the Trust's agreement to permit the payoff the of the Loan, including both Tranche A and Tranche B of the Loan, and to release the mortgage and security instruments relating thereto, the Trust shall be entitled to receive, among other relief if applicable, an amount equal to what would have been the principal, interest and other outstanding amounts due under Tranche B based on any determination(s) by the Court.

3. Pursuant to the Order, Related Companies, L.P. is providing a guarantee to be utilized solely in the Action in the maximum amount of $6,400,000.00 in connection with any obligation that may be imposed on Borrower under any judgment or under any settlement in the Action.

4. This Agreement shall be binding and inure to the benefit of the successors and assigns any of the Parties hereto.

5. Notice to any Party under this Agreement shall be provided as follows: to Borrower: Bruce A. Weil at bweil@bsfllp.com, Jennifer McCool at JMcCool@related.com and Wallace L. Schwartz at wschwartz@kasowitz.com, to Lender: Michael S. Woodbury at Michael.woodbury@woodbury-santiago.com, and Peter H. Haveles, Jr. at havalesp@pepperlaw.com.

6. This Agreement shall be governed by and construed in accordance with the provisions set forth in Section 10.3(a) (entitled Governing Law) of the 2007 Agreement.

7. The Parties agree that the Court shall have exclusive jurisdiction regarding the adjudication of any disputes under this Agreement.

8. No modification of waiver of the provisions of this Agreement shall be valid and enforceable unless such modification or waiver is in writing and signed by all the Parties.

9. This Agreement may be executed in counterparts, and each counterpart shall have the same force and effect as an original and shall constitute a binding settlement agreement on the part of each the undersigned.

10. Execution of this Agreement is not to be deemed an admission by any Party. In the event of any ambiguity(ies) or conflict, the terms of the Order shall prevail.

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date set forth above.

CITYPLACE RETAIL, L.L.C.,
a Delaware limited liability company

   By: CityPlace Retail Mezzanine, L.L.C.,
   a Delaware limited liability company,
   its sole member

      By: CP Mezzanine Manager, L.L.C.,
      a Delaware limited liability company,
      its managing member

         By: City Place Partners,
         a Florida general partnership,
         its managing member

            By: Related CityPlace Associates, L.P.,
            a Delaware limited partnership,
            its administrative partner

               By: Related CityPlace, L.L.C.,
               a Delaware limited liability company,
               its general partner

               By: _____
               Name:
               Title:

WELLS FARGO BANK, N.A., AS TRUSTEE FOR THE REGISTERED HOLDERS OF CREDIT SUISSE FIRST BOSTON MORTGAGE SECURITIES CORP., COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-C1,

By: Berkadia Commercial Mortgage LLC, its Master Servicer

By: _____
Name: THOMAS MIRAGLIA
Title: Authorized Representative

#51254054 v2

**EXHIBIT "C"**

**GUARANTY**

(See Atached)

# GUARANTY

FOR VALUABLE CONSIDERATION, the undersigned (the "*Guarantor*") hereby unconditionally guarantees to Wells Fargo, N.A., as trustee for the registered Holders of Credit Suisse First Boston Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 2007-C1 (the "*Lender*"), and its successors, participants, endorsees and/or assigns, the due performance and full and prompt payment of any and all obligations and indebtedness of CityPlace Retail, LLC (the "*Borrower*"), to Lender arising out of any judgment entered in the action entitled CityPlace Retail, LLC v. Wells Fargo Bank., N.A., Case No. 18-CV-81699 pending in the United States District Court for the Southern District of Florida (the "*Action*") or any payment to be made by Borrower pursuant to a settlement of the Action, provided however that Guarantor's obligation under this guaranty shall not exceed the sum of six million, four hundred thousand dollars ($6,400,000.00) and that such obligation and indebtedness arise solely out of the dispute relating to the appointment of a qualified appraiser. .

The obligations hereunder are independent of any obligations of Borrower, to the extent any exist, and a separate action may be brought and prosecuted against Guarantor, whether or not action is brought against Borrower; Borrower may be joined in any such action or actions. This is a guaranty of payment and not of collection.

Guarantor acknowledges and agrees with Lender that each indebtedness is a valid and binding obligation of Borrower. Guarantor acknowledges and agrees that no act or omission of any kind by Lender, including, but not limited to, the failure to take or perfect a security interest in any security for the indebtedness shall affect or impair this Guaranty, and the Lender shall have no duties with respect thereof to Guarantor. Lender may without notice assign this Guaranty in whole or in part at any time.

Guarantor waives any right to require Lender to (a) proceed against Borrower; (b) proceed against or exhaust any security held from Borrower; or (c) pursue any other remedy whatsoever available to Lender. Guarantors waive any right to enforce any remedy that Lender now has or may hereafter have against Borrower, and shall waive any benefit of, and any right to participate in, any security now or hereafter held by Lender. Guarantor waives all presentments, demands for performance, notices of nonperformance, protests, notices of dishonor and notices of acceptance of this Guaranty and of the existence, creation or incurrence of new or additional indebtedness and all other defenses to any action or proceeding to enforce this Guaranty, except the defense that (i) the sum claimed has actually been paid to Lender, (ii) the sum is not required to be paid to Lender in accordance with any judgment or settlement in the Action, and/or (iii) the Borrower has any set-offs under any judgment or settlement in the Action. Subject to actions taken in connection with the Action, Guarantor covenants to cause Borrower to maintain and preserve the enforceability of any instruments now or hereafter executed in favor of Lender and to take no action of any kind that might be the basis for a claim that Guarantor has any defense hereunder other than payment in full of all Borrower's indebtedness to Lender and/or Borrower has any set-offs. Guarantor hereby indemnifies Lender against any loss, cost, or expense by reason of the assertion by Guarantor of any defense hereunder based upon any such action or inaction of Borrower. Guarantor waives any right or claim of right to cause a marshalling of the Borrower's assets. No

1

delay on the part of Lender in the exercise of any right, power or privilege under the terms of any judgment against Borrower or under this Guaranty shall operate as a waiver of any such privilege, power or right. Guarantors understand and agree that Guarantor is fully responsible for being and keeping informed of the financial condition of Borrower and of all circumstances bearing on the risk of failure to repay the indebtedness.

Guarantor acknowledges and agrees with Lender that any and all indebtedness of Borrower now or hereafter held by Guarantor is hereby subordinated to the indebtedness of Borrower to Lender, and such indebtedness of Borrower to Guarantor, if Lender so requests, shall be collected.

Guarantor agrees to pay all attorneys' fees and all other costs and expenses that may be incurred or expended by Lender in the enforcement of this Guaranty, whether suit be brought or not, and if suit is brought, then for all services in trial and appellate courts.

This Guarantee is governed by shall be governed by the substantive laws of the State of New York, without reference to choice of law principles.

No amounts paid under this Guaranty shall in any way or at any time entitle Guarantor to any right, claim or cause of action against the Borrower, or to any right, title or interest in or to any of the indebtedness or any rights of the Lender, or in or to any instruments or documents evidencing or securing or concerning the indebtedness (whether by way of subrogation, reinvestment or otherwise) until all indebtedness is paid in full.

The Guarantor shall furnish to Lender, within thirty (30) days after completion of its yearly fiscal financial statement, a complete financial statement for itself. Financial statements must be prepared in accordance with generally accepted accounting principles and must be accompanied by a certification signed by a certified public accountant stating whether the financial statement has been audited, reviewed or compiled.

The term "*Guarantor*" as used in this Guaranty shall refer to the undersigned party, and all promises, agreements, covenants, waivers, consents, representations, warranties and other provisions in this Guaranty are made by and shall be binding upon each and the undersigned party.

Each provision hereof is intended to be severable and the invalidity or illegality of any portion of this Continuing Guaranty shall not affect the validity or legality of the remainder hereof.

LENDER BY ITS ACCEPTANCE HEREOF AND GUARANTOR HEREBY VOLUNTARILY, KNOWINGLY AND INTENTIONALLY WAIVE ANY AND ALL RIGHTS TO TRIAL BY JURY IN ANY LEGAL ACTION OR PROCEEDING ARISING UNDER THIS GUARANTY OR CONCERNING THE INDEBTEDNESS AND/OR ANY COLLATERAL THEREFOR OR PERTAINING TO ANY TRANSACTION RELATED TO OR CONTEMPLATED THEREBY, REGARDLESS OF WHETHER SUCH ACTION OR PROCEEDING CONCERNS ANY CONTRACTUAL OR TORTIOUS OR OTHER CLAIM. GUARANTORS ACKNOWLEDGE THAT THIS WAIVER OF JURY TRIAL IS A MATERIAL INDUCEMENT TO THE LENDER IN EXTENDING CREDIT TO THE BORROWER, THAT THE LENDER WOULD NOT HAVE EXTENDED SUCH CREDIT WITHOUT THIS JURY TRIAL WAIVER, AND THAT SUCH GUARANTORS HAVE BEEN

REPRESENTED BY AN ATTORNEY OR HAS HAD AN OPPORTUNITY TO CONSULT WITH AN ATTORNEY IN CONNECTION WITH THIS JURY TRIAL WAIVER AND UNDERSTAND THE LEGAL EFFECT OF THIS WAIVER.

This Guaranty may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute but one instrument.

IN WITNESS WHEREOF, Guarantor has executed this Guaranty on the date set forth below its signature lines, to be effective on the date thereof.

Signed, sealed and delivered
in the presence of:

The Related Companies, L.P.

By: The Related Realty Group, Inc., its general partner

By: _____
Name: Jennifer A. McCool
Title: Chief lyl' cc