**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**Case No. 9:18-cv-81689-ROSENBERG/REINHART**

CITYPLACE RETAIL, LLC,
a Foreign Limited Liability Company,

      Plaintiff,

vs.

WELLS FARGO BANK, N.A., AS TRUSTEE
FOR THE REGISTERED HOLDERS OF CREDIT
SUISSE FIRST BOSTON MORTGAGE SECURITIES
CORP., COMMERCIAL MORTGAGE SECURITIES
CORP., COMMERCIAL MORTGAGE PASS-THROUGH
CERTIFICATES, SERIES 2007-C1,

      Defendant.

_____/

## PLAINTIFF'S DISPOSITIVE MOTION FOR SUMMARY JUDGMENT

Plaintiff CITYPLACE RETAIL, L.L.C. ("CityPlace"), by and through its undersigned

counsel, and pursuant to Federal Rule of Civil Procedure 56 and S.D. Fla. Local Rule 56.1, hereby

files its Dispositive Motion for Summary Judgment as to Defendant WELLS FARGO BANK,

N.A.'s AS TRUSTEE FOR THE REGISTERED HOLDERS OF CREDIT SUISSE FIRST

BOSTON MORTGAGE SECURITIES CORP., COMMERCIAL MORTGAGE PASS-

THROUGH CERTIFICATES, SERIES 2007-C1's ("Wells Fargo") Amended Counterclaim

("Counterclaim") [ECF No. 50].[1]

_____

[1] The instant motion is dispositive because CityPlace's Claim for Declaratory Judgment
would be rendered moot if the Court were to grant summary judgement as to Wells Fargo's
Counterclaim.

## TABLE OF CONTENTS

INTRODUCTION............................................................................................................1

ANALYSIS....................................................................................................................4

    A.    Legal standard.................................................................................4

    B.    CityPlace provided Wells Fargo a timely and proper appraisal
        under § 4.9. ................................................................................5

        1.    CityPlace satisfied its procedural obligations in § 4.9(g)(i)-(iv). ..........5

        2.    CityPlace's appraisal report complied with § 4.9(g) and
               § 4.9(g)(v). ................................................................................6

        3.    CityPlace did not "conceal" pertinent information relating to
               the appraised value of the Property...........................................8

    C.    Wells Fargo did not satisfy its obligations under § 4.9.............................9

        1.    Wells Fargo failed to timely appoint its Qualified Appraiser. ...............9

        2.    Wells Fargo failed to provide timely and proper notice of the
               identity of its Qualified Appraiser. ....................................................12

        3.    Wells Fargo's failures to timely appoint and identify its
               Qualified Appraiser constitute failures to satisfy conditions
               precedent which result in CityPlace's appraisal being
               "conclusive and binding" under § 4.9(g)(iv). ....................................14

CONCLUSION .........................................................................................................17

# TABLE OF AUTHORITIES

**Cases**

*Accadia Site Contracting, Inc. v. Erie Cty. Water Auth.*
  983 N.Y.S.2d 387 (N.Y. App. Div. 2014) ............................................................. 15

*ALJ Capital I, L.P. v. David J. Joseph Co.*
  851 N.Y.S.2d 154 (N.Y. App. Div. 2008) ............................................................. 16

*Anderson v. Liberty Lobby*
  477 U.S. 242 (1986) ................................................................................................ 5

*Bank of New York Mellon Tr. Co., N.A. v. Morgan Stanley Mortg. Capital, Inc.*
  821 F.3d 297 (2d Cir. 2016) ................................................................................. 16

*Celotex Corp. v. Catrett*
  477 U.S. 317, 322 (1986) ........................................................................................ 4

*Desouza v. Fed. Home Mortg. Corp.*
  572 F. App'x 719 (11th Cir. 2014) ......................................................................... 8

*E. Baby Stores, Inc. v. Cent. Mut. Ins. Co.*, 07 CIV. 3890 (LAP)
  2008 WL 2276527 (S.D.N.Y. June 2, 2008) ........................................................ 15

*Garden Aire Vill. S., Condo. Assoc., Inc. v. QBE Ins. Corp.*, 10-61985-CIV
  2013 WL 12086654 (S.D. Fla. May 10, 2013) ...................................................... 15

*Great Canal Realty Corp. v. Seneca Ins. Co., Inc.*
  5 N.Y.3d 742 (2005) .............................................................................................. 15

*Greco v. Bank of Am., N.A.*
  No. 16-CV-2196 (AMD), 2017 WL 1483524 (E.D.N.Y. April 25, 2017) ................ 3

*Hall v. Korth*
  244 So. 2d 766 (Fla. 3d DCA 1971) ....................................................................... 7

*Harrison v. Allstate Ins. Co.*
  No. 98-CV-2791 (FB), 1999 WL 638243 (S.D.N.Y. Aug. 18, 1999) ....................... 3

*Israel v. Chabra*
  537 F.3d 86 (2d Cir. 2008) .................................................................................... 16

*MHR Capital Partners LP v. Presstek, Inc.*
  12 N.Y.3d 640 (2009) ............................................................................................ 15

*Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*
  86 N.Y.2d 685 (1995) ............................................................................................ 15

*Peter Scalamandre & Sons, Inc. v. FC 80 Dekalb Assocs., LLC*
  12 N.Y.S.3d 133 (N.Y. App. Div. 2015) ................................................................. 15

*Pryor v. USX Corp.*
  806 F. Supp. 460 (S.D.N.Y. 1992) ........................................................................... 5

*Realauction.com, LLC v. Grant St. Grp., Inc.*
  82 So. 3d 1056 (Fla. 4th DCA 2011) ........................................................................ 8

*Schindler Elevator Corp. v. Tully Const. Co., Inc.*
  139 A.D.3d 930, 30 N.Y.S.3d 707, 709 (N.Y. App. Div. 2016) ............................. 15

*Utica Mut. Ins. Co. v. Clearwater Ins. Co.*
  906 F.3d 12 (2d Cir. 2018) ...................................................................................... 15

**Statutes**

N.Y. General Construction Law § 20 ......................................................................... 3

## INTRODUCTION

Resolution of this motion turns on whether the parties complied with a single provision in their agreement concerning the procedural and substantive means by which real estate appraisals were to be conducted. This contractual clause is clear on its face and there is no dispute as to its interpretation. The only question in dispute is whether each party performed its unambiguous obligations to the other party. The undisputed answer as borne out by numerous witnesses' testimony and contemporaneous documents is that, while CityPlace fully performed its obligations to Wells Fargo pursuant to that provision, Wells Fargo failed to perform its obligations to CityPlace. Accordingly, the Court can resolve this dispute now as a matter of law.

CityPlace and Wells Fargo were contractually required to use a specific appraisal procedure in the event CityPlace provided Wells Fargo with written notice of CityPlace's intent to refinance the loan as set forth in § 4.9 of a 2011 Loan Modification Agreement ("LMA") to determine the value of a commercial property in West Palm Beach known as CITYPLACE located at 700 S. Rosemary Avenue (hereafter, "the Property"). SOF ¶¶ 1–6. The undisputed evidence—including the testimony and emails of Wells Fargo's agents—establishes that (1) CityPlace complied with the appraisal procedures, and timely delivered an appraisal report to Wells Fargo that was valid in all respects and in compliance with § 4.9 of the LMA;[2] (2) Wells Fargo, as a result of a series of internal "mistakes," failed to comply with the appraisal procedure by failing to timely provide CityPlace with written notice of the identity of the Qualified Appraiser appointed by Wells Fargo for the refinance; and (3) Wells Fargo, after having realized its time to respond and comply under § 4.9(g)(i) had passed, produced an appraisal report that was both untimely and substantively invalid.

---

[2] Hereinafter, every citation to § 4.9 refers to § 4.9 of the LMA.

1

Wells Fargo has formulated its Counterclaim as an attempt to circumvent the contractual consequences of its internal errors and omissions. The undisputed evidence demonstrates that Wells Fargo's Counterclaim is unfounded. As a consequence, Wells Fargo's appraisal report must be disregarded pursuant to § 4.9(g)(iv). Therefore, CityPlace's appraisal report governs per § 4.9(g)(iv) and Wells Fargo is not entitled to any relief under its Counterclaim for Declaratory Judgment.

## **BACKGROUND**

In 2007, CityPlace secured a $150,000,000 loan in connection with the Property. SOF ¶ 2. There were several amendments and modifications to the original loan documents through the years and eventually Wells Fargo became the lender through assignment. SOF ¶¶ 3–6. The dispute in this lawsuit concerns § 4.9(g), which dictates the procedure by which the parties agreed to appraise the value of the Property in the event CityPlace elected to refinance the loan.[3]

CityPlace did indeed elect to refinance the loan. Pursuant to § 4.9(d), CityPlace provided Wells Fargo with a timely notice of its intent to refinance by letter dated September 7, 2018 and effective September 10, 2018.[4] SOF ¶¶ 13–15, 20. This triggered the appraisal procedure and time requirements set forth in § 4.9(g) for the parties to (1) appoint an appraiser, (2) disclose its appraiser's identity to the other side, and (3) exchange appraisal reports. Each of those three steps needed to be completed according to the strict timeframes set forth in § 4.9(g)(i)-(ii) (which is discussed in more detail below). SOF ¶ 16.

---

[3] The Appraised Value of the property was significant because it would determine the Net Refinancing Proceeds payable to Wells Fargo at closing. *See* SOF ¶ 17.

[4] Section 6.9 of the LMA provides that notice shall be effective upon hand delivery or delivery date of overnight courier service. *See* SOF ¶ 7. Section 6.9 of the LMA also provides for computation of the effective date in the event the notice is sent via regular mail. *Id.* However, CityPlace sent all notices via overnight courier service. *See* SOF ¶¶ 20, 25, 26, 28.

Section 4.9(g) also imposed several substantive requirements on the appraisals. First, each appraisal was required to consider the "fair market value of the Property" as of a specific date. SOF ¶ 18. The "as of" date would be determined based on the timing procedure in § 4.9(g)(i). SOF ¶¶ 18–19. Second, the appraisals were to be performed in accordance with the Uniform Standards of the Appraisal Practice ("USPAP"), and in substance, they had to meet the "minimum appraisal standards" promulgated by the Comptroller of the Currency pursuant to FIRREA (which are known as the "Interagency Guidelines"). SOF ¶¶ 19, 72. According to the Interagency Guidelines, a "market value" value estimate should be based on the property's *actual zoning* "as of the effective date" of the appraisal regardless of whether a zoning change is possible in the future. SOF ¶¶ 73–74.

Because CityPlace's notice of intent to refinance was the triggering event that started the appraisal process under § 4.9(g), all other dates and deadlines were determined by "counting forward" from the refinance notice.[5] SOF ¶ 21. Here, it is undisputed CityPlace provided its refinance notice to Wells Fargo pursuant to its letter dated September 7, 2018 and effective September 10, 2018. SOF ¶ 20. As a result, pursuant to § 4.9(g)(i), both parties were required to "appoint" a Qualified Appraiser for the refinance transaction by September 24, 2018, and then

---

[5] The effective date of CityPlace's written notice of intent to refinance is excluded in making the calculation of the deadlines set forth in § 4.9. *See* N.Y. GENERAL CONSTRUCTION LAW § 20 (McKinney 2019) (providing, in pertinent part, that "[t]he day from which any specified period of time is reckoned shall be excluded in making the reckoning"); *Harrison v. Allstate Ins. Co.*, No. 98-CV-2791 (FB), 1999 WL 638243, at *1 (S.D.N.Y. Aug. 18, 1999) ("Under New York law, the General Construction Law governs the construction of contractual terms . . . ."); *see also Greco v. Bank of Am., N.A.*, No. 16-CV-2196 (AMD), 2017 WL 1483524, at *4–5 (E.D.N.Y. April 25, 2017) (calculating a deadline in accordance with N.Y. GENERAL CONSTRUCTION LAW § 20). Additionally, § 1.1 of the Amended and Restated Loan Agreement dated February 27, 2007 defines "Business Day" as "any day other than Saturday, Sunday, or any other day on which national banks in New York, New York are not open for business." FOF ¶ 23. Importantly, national banks in New York, New York were not open for business on October 8, 2018. FOF ¶ 24.

both parties were required to "notify the other of the identity of its Qualified Appraiser so engaged" by October 1, 2018. SOF ¶¶ 32, 38. When each side provided "notice" of the identity of its Qualified Appraiser, it was required to do so in writing, delivered to each party's designated mailing address in the Loan Documents. SOF ¶¶ 7, 39.[6] Finally, if each party timely appointed a Qualified Appraiser for the refinance transaction, then each party's appraiser was required to deliver its refinance appraisal to the other party no later than October 24, 2018, at the latest. SOF ¶ 57.

Two other provisions from the appraisal procedure are relevant to this dispute. First, if either party failed to receive timely notice of its counterparty's appointed appraiser, such party was required to notify the defaulting party by no later than October 9, 2018. SOF ¶¶ 19, 26. Finally, if either party failed to appoint an appraiser for the refinance as required by § 4.9(g)(i), pursuant to § 4.9(g)(iv) the defaulting party would forfeit its right to provide an appraisal, and the non-defaulting party's appraisal report would be "conclusive and binding" on the Property's valuation for purposes of the refinancing. SOF ¶ 19. As discussed in detail below, CityPlace complied with this process to the tee. *See, e.g.*, SOF ¶¶ 26–27. Wells Fargo, on the other hand, clearly did not.

## ANALYSIS

### A.    Legal standard

Rule 56 instructs that summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A moving party is

---

[6] The June 2017 Loan Reinstatement and Modification Agreement updated the addresses to which notices must be delivered. SOF ¶¶ 11–12. CityPlace's notices were all properly addressed in accordance with the June 2017 Loan Reinstatement and Modification Agreement. SOF ¶¶ 20, 25, 26, 28.

4

"entitled to judgment as a matter of law" on an issue where the nonmoving party bears the burden of proof, and the moving party "show[s]—that is, point[s] out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Once that burden is met, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial" by demonstrating that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). Summary judgment should be granted where all the material facts have been presented to the court, and a rational fact-finder could only find for the movant. *Pryor v. USX Corp.*, 806 F. Supp. 460, 463 (S.D.N.Y. 1992).

**B.    CityPlace provided Wells Fargo a timely and proper appraisal under § 4.9.**

As discussed above, the appraisal process under § 4.9 had both procedural and substantive components. CityPlace complied with both aspects, as established by the evidence discussed below.

**1.    *CityPlace satisfied its procedural obligations in § 4.9(g)(i)-(iv).***

Under § 4.9(g)(i): "Each party shall ***notify*** the other of the identity of its Qualified Appraiser so engaged within fifteen (15) Business Days after receipt of the notice regarding the intended Refinance." (emphasis added). SOF ¶ 19. All "notices" are governed by the notice requirements in § 6.9 (titled "Notices"), which provides that:

> Any and all **notices**, elections, approvals, consents, demands, requests, and responses ("Communications") permitted or required to be given under this Agreement or the Loan Documents **shall not be effective unless in writing, signed by or on behalf of the Party giving the same, and sent by hand delivery or overnight courier service** . . . to the Party to be notified . . . .

(emphasis added). SOF ¶¶ 7–8, 12. In addition, the parties agreed that timely compliance with all requirements under the LMA was required. SOF ¶¶ 10–11 (citing LMA, § 6.15 ("**Time is of the essence of this Agreement and the Loan Documents**.")).

With respect to the procedural/timing requirements in § 4.9(g)(i)-(iv), CityPlace's

compliance cannot be disputed. Because CityPlace's refinance notice was effective as of September 10, 2018, CityPlace was required to "appoint" its appraiser for purposes of the refinance between September 10, 2018 and September 24, 2018. *See* SOF ¶ 19; *see also* SOF ¶ 30. CityPlace met this requirement. SOF ¶¶ 25, 29. Likewise, CityPlace was required to provide Wells Fargo written notice of the identity of CityPlace's appraiser between September 10, 2018 and October 1, 2018. *See* SOF ¶ 19; *see also* SOF ¶ 37. Again, it is undisputed that CityPlace provided such notice, in full compliance with the "notice" provisions of the LMA. SOF ¶¶ 25, 29.

In addition to timely "appointing" and "identifying" its appraiser, CityPlace also provided timely written notice to Wells Fargo under § 4.9(g)(i) by letter dated October 8, 2018 and effective October 9, 2018 stating that Wells Fargo *failed* to timely appoint or timely identify an appraiser for the refinancing. SOF ¶¶ 26–27, 29. CityPlace further stated that, as a consequence of Wells Fargo's failure, CityPlace's appraisal would be the only appraisal considered, pursuant to the unambiguous language of § 4.9(g)(iv). SOF ¶ 26. Finally, pursuant to § 4.9(g)(ii), CityPlace delivered a copy of Cushman & Wakefield's appraisal report to Wells Fargo by letter dated October 11, 2018 and effective October 12, 2018, also within the timeframe allowed. SOF ¶ 28.

### 2.    *CityPlace's appraisal report complied with § 4.9(g) and § 4.9(g)(v).*

CityPlace's appraisal complied with all substantive requirements for appraisal reports set forth in § 4.9(g) and § 4.9(g)(v). Wells Fargo's assertions to the contrary are undermined by the evidence. Wells Fargo contends that Cushman & Wakefield's appraisal is invalid because it was based on the Property's current zoning status as of October 12, 2018. According to Wells Fargo, because there was a pending zoning application for the Property scheduled for a hearing on November 5, 2018 before the City of West Palm Beach, Cushman & Wakefield should have evaluated the Property based on hypothetical future zoning—i.e., to assume the zoning application would be granted. *See* Counterclaim, ¶ 80 [ECF No. 50]. Further, Wells Fargo contends that

CityPlace "knew" that the City of West Palm Beach would grant the zoning application, but "concealed" this allegedly pertinent information from Cushman & Wakefield. *See* Counterclaim, ⁋ 69 [ECF No. 50]. All of these allegations have proven to be false.

CityPlace delivered its appraisal report to Wells Fargo on October 12, 2018. SOF ¶ 28. As required by § 4.9(g)'s definition of "Appraised Value," the report expressed a fair market valuation of the Property "**as of a date not earlier than sixty (60) days prior to the closing of the New Loan**," based on the current zoning as of that date. SOF ¶ 18; *see also* SOF ¶¶ 61, 63. CityPlace did not "know" the City of West Palm Beach would grant the zoning application. SOF ¶¶ 60, 68. The City Commissioners did not cast their votes on the application until November 5, 2018. SOF ¶ 69. The Commissioners voted only after considering public comments, including strong opposition from members of the community. SOF ¶¶ 66–67. Following public comments, and a last minute change to the Property's energy efficiency requirements, the City of West Palm Beach ultimately voted to approve the zoning change application. SOF ¶¶ 66–69. There was no guarantee the zoning application would be granted, as opposed to being denied, postponed, modified, or some other outcome. *Id.* And there was assuredly no way for CityPlace to "know" the outcome in advance. *Id.*

In fact, under Florida's Government-in-the-Sunshine Law, Chapter 286, Florida Statutes, the City Commissioners would have violated the law if they secretly reached a majority decision on a zoning application (and provided this information *ex parte* to CityPlace) before the public hearing. *See generally* Fla. Stat. § 286.001, *et seq*. Moreover, courts in Florida have rejected the possibility that a legal claim may be maintained on the allegation that it can be "known" how a legislative body will vote. *Sec. Mgmt. Corp. v. Markham*, 516 So. 2d 959, 963 (Fla. 4th DCA 1987) ("Thus it is clear that speculation as to future zoning changes, or ignorance or disregard of present

zoning restrictions, is improper in assessment decisions."); *Hall v. Korth*, 244 So. 2d 766, 768 (Fla. 3d DCA 1971) (holding that the mere fact the county planning and zoning departments recommended approving the zoning application did not require the county commission to approve the application); *Realauction.com, LLC v. Grant St. Grp., Inc.*, 82 So. 3d 1056, 1060 (Fla. 4th DCA 2011) (plaintiff's hope that the county would vote in favor of approving contract was too speculative to support tortious interference claim). Wells Fargo's accusations necessarily imply unlawful conduct on the part of CityPlace, the City of West Palm Beach, and the City Commissioners. Because these allegations sound in fraud, they should be dismissed outright for Wells Fargo's failure to meet the pleading standard of Rule 9(b). *See Desouza v. Fed. Home Mortg. Corp.*, 572 F. App'x 719, 722 (11th Cir. 2014). In the alternative, because Wells Fargo lacks any evidence to support them, these allegations are insufficient to create any material issues of fact sufficient to defeat CityPlace's motion.

### 3.  *CityPlace did not "conceal" pertinent information relating to the appraised value of the Property.*

CityPlace did not "conceal[] from Cushman & Wakefield pertinent information regarding the status of the zoning change application," as Wells Fargo baselessly asserts in its Counterclaim. *See* Counterclaim, ⁋ 69 [ECF No. 50]. Section 4.9(g)(v) required the parties' appraisal reports to meet the minimum standards of FIRREA. SOF ¶ 71. The "Interagency Guidelines" promulgated under FIRREA mandate that: "***The estimate of market value should consider the real property's actual physical condition, use, and zoning as of the effective date of the appraiser's opinion of value.***" SOF ¶ 73. Here, the "effective date" of Cushman & Wakefield's appraisal was October 12, 2018; therefore, the "estimate of market value" had to be based on the property's ***actual zoning*** as of October 12, 2018. *See* SOF ¶¶ 63, 73–74. Accordingly, the undisputed factual record establishes that CityPlace provided all the information and data about the Property that Cushman

& Wakefield deemed pertinent. SOF ¶ 62. A pending zoning application is not a "material factor" that would have "substantially increased" the Property's valuation, as Wells Fargo incorrectly claims, because Cushman & Wakefield itself takes the position that under no circumstances would a potential future zoning change have impacted its valuation of the Property. SOF ¶¶ 62–65; *see also* FOF ¶ 70.

In summary, CityPlace's October 12, 2018 appraisal report complied with both the procedural requirements of § 4.9(g)(i)-(iv), as well as the substantive requirements of § 4.9(g) and (g)(v). At each step in the process, CityPlace met its obligations. It provided Wells Fargo with a timely, valid appraisal. On these points, there are no genuinely disputed material facts.

**C.      Wells Fargo did not satisfy its obligations under § 4.9.**

   **1.      *Wells Fargo failed to timely appoint its Qualified Appraiser.***

The evidence that Wells Fargo failed to timely appoint an appraiser is clear and irrefutable. The evidence comes directly from the testimony and emails of employees of Berkadia, which is Wells Fargo's loan servicing company responsible for Wells Fargo's compliance with § 4.9. Equally clear is the reason *why* Wells Fargo and Berkadia failed to comply with § 4.9: Berkadia's employees mistakenly failed to realize that CityPlace's September 7, 2018 notice of intent to refinance, effective September 10, 2018, triggered the appraisal process set forth in § 4.9, and the Berkadia employee responsible for complying with § 4.9 mistakenly failed to properly calendar the deadlines set forth in § 4.9. *See generally* SOF ¶¶ 51–55.

Wells Fargo does not dispute its mistakes. On September 10, 2018, CityPlace delivered its written notice of its intent to refinance to Wells Fargo, in which CityPlace stated in plain terms: "[i]n accordance with, and subject to, Section 4.9(d) of the Modification, notice is hereby given that Borrower [CityPlace] ***will refinance the Loan*** (as defined in the Modification) on December 11, 2018" (emphasis added). SOF ¶ 20. Berkadia's employee Christie Corallo, who was

responsible for processing and recording the refinance notice in the appropriate computer system, did not realize CityPlace's September 7, 2018 notice of intent to refinance—effective September 10, 2018—was a notice of intent to refinance under § 4.9(d). SOF ¶ 52. Ms. Corallo did not discover this error until September 24, 2018 (Wells Fargo's deadline to appoint an appraiser under § 4.9(g)(i)). *Id.* As a consequence, CityPlace's notice of refinance was not assigned to an appropriate analyst, and Wells Fargo took no action until September 24, 2018. SOF ¶¶ 52–53.

Geraldine Kohut, Berkadia's Vice President – Underwriter in the Special Request Master Servicing Department, also concedes her significant errors in handling CityPlace's refinance notice. SOF ¶¶ 52–55. On September 24, 2018, the date Ms. Corallo realized that Wells Fargo had received CityPlace's notice of intent to refinance, Ms. Kohut was assigned to handle CityPlace's refinance of the loan. *Id.* On or around that same day, Ms. Kohut reviewed § 4.9(g). SOF ¶ 53. Although Ms. Kohut was responsible for calendaring and tracking the deadlines set forth in § 4.9(g), she failed to do so because she too failed to realize that CityPlace's September 7, 2018 notice of intent to refinance triggered the deadlines set forth in § 4.9(g). SOF ¶ 54. In fact, Ms. Kohut remained unaware that CityPlace's September 7, 2018 notice of intent to refinance had triggered the appraisal deadlines until she prepared for her deposition in this matter, taken April 18, 2019. SOF ¶ 54. Ms. Kohut admitted that her failure to calendar the deadlines set forth in § 4.9(g) was a "mistake." SOF ¶ 52. Moreover, Ms. Kohut conceded that CityPlace complied in all respects with § 4.9(g), including CityPlace's timely delivery to Wells Fargo of (1) CityPlace's notice of its appointment of Cushman & Wakefield; (2) CityPlace's notice of Wells Fargo's failure to timely appoint an appraiser for the refinance; and (3) CityPlace's appraisal report. SOF ¶ 29.

As a result of these errors, Wells Fargo did not timely appoint an appraiser for the refinancing. Berkadia's own email to CityPlace dated **October 5, 2018** establishes this fact. Ms.

10

Kohut told CityPlace:

> I have been assigned the Capital Event refinance. Attached is our Requirements
> Letter. ***Once you have countersigned the letter, Berkadia <u>will</u> appoint an MAI
> appraiser*** and I will let you know the cost thereof . . . .

*See* SOF ℙ 33 (emphasis added). The only conclusion a reasonable fact-finder could reach from
the above correspondence is that as of October 5, 2018—well after Wells Fargo's September 24,
2018 appointment deadline—Wells Fargo had not yet appointed its Qualified Appraiser. Wells
Fargo was representing to CityPlace that Wells Fargo "*will* appoint an MAI appraiser" in the
future. *Id.*; *see* FOF ¶¶ 22, 31.

Second, it is undisputed that Wells Fargo did not actually appoint Stuart Lieberman of
CBRE to be its Qualified Appraiser for the refinance transaction until November 1, 2018, when
Wells Fargo returned an executed engagement letter to Stuart Lieberman. SOF ¶ 35.

Third, in an email from Berkadia to CBRE from October 19, 2018, Berkadia took the
position that it had not yet engaged CBRE for purposes of the refinancing appraisal. SOF ¶ 34.

Fourth, in an internal Berkadia email from November 5, 2018, Berkadia took the position
that it had not engaged CBRE for the refinancing appraisal until the previous week, meaning late
October or early November. SOF ¶ 36. This is consistent with the undisputed fact that Wells Fargo
did not actually retain CBRE as its Qualified Appraiser for the refinance until November 1, 2018.
SOF ¶ 35. This belies Wells Fargo's claim that it appointed and identified CBRE as its appraiser
for the refinance sooner. *See* Counterclaim, ℙ 56 [ECF No. 50].

Finally, although Wells Fargo previously used CBRE for an unrelated appraisal of the
property in August 2018 (relating to a bond transaction), Wells Fargo's prior engagement of CBRE
is irrelevant for purposes of § 4.9(g). In fact, both Lorena Trujillo, outside counsel for Berkadia,
and Stuart Lieberman testified that Wells Fargo's engagement of CBRE for the August 2018 bond

appraisal was unrelated to the refinance appraisal under § 4.9(g). *See* SOF ¶¶ 35, 50.

> **2.    *Wells Fargo failed to provide timely and proper notice of the identity of its Qualified Appraiser.***

Under § 4.9(g)(i), Wells Fargo was required provide CityPlace proper notice of the identity of its appointed Qualified Appraiser no later than October 1, 2018. SOF ¶¶ 22, 38. The undisputed facts establish that Wells Fargo did not do so. *See* FOF ¶ 56.

Wells Fargo concedes that it did not provide CityPlace with written notice of the identity of its Qualified Appraiser at any time between September 10 and October 1, 2018, i.e., during the window of fifteen Business Days *after* the refinance notice. Instead, Wells Fargo contends that it somehow appointed and/or identified CBRE as its appraiser for the refinancing transaction in "**August 2018**" via "oral and written communications." *See* Counterclaim, ℙ 57 [ECF No. 50]. This contention fails for a variety of reasons.

First, assuming it were factually true (which it is not, as discussed below), it would be irrelevant as a matter of contractual compliance. There is no provision in the LMA that authorizes Wells Fargo to appoint its Qualified Appraiser several weeks ***prior*** to CityPlace's delivery of its refinance notice. Rather, § 4.9(g)(i) specifically requires Wells Fargo to identify in writing its Qualified Appraiser for purposes of the refinance transaction "after receipt" of CityPlace's written notice of intent to refinance. SOF ¶¶ 19, 42. Relatedly, Wells Fargo claims only that it provided its premature August 2018 notice identifying CBRE as its appraiser through "oral and email communications." Any such "oral and email communications" were ineffective, as they failed to strictly comply with § 6.9. *See* SOF ¶¶ 7, 9.

Putting aside the fact that "oral and email" notices from August 2018 do not satisfy the requirements of § 4.9(g), it is also factually untrue that any such "oral and email" notices pertained to *the refinancing appraisal.* When Wells Fargo was asked in an interrogatory to describe the

12

details of each instance that Wells Fargo allegedly identified an appraiser as required by § 4.9(g)(i) in connection with the *refinance* appraisal, Wells Fargo simply identified certain instances when Wells Fargo identified CBRE as its appraiser for a completely unrelated appraisal for a bond issuance. SOF ¶¶ 40–44. Therefore, that evidence is irrelevant to Wells Fargo's compliance with § 4.9(g).

Given the absence of any documentary evidence that Wells Fargo identified CBRE as its *refinance* appraiser, it is not surprising that none of Berkadia's witnesses recall providing such notice to CityPlace. In its interrogatory responses, Wells Fargo identified four witnesses as "persons with knowledge" that Wells Fargo identified CBRE as its refinance appraiser. During their depositions, however, each of these witnesses testified that they had no such knowledge. Rather, each of them pointed towards a different employee as the one who allegedly told CityPlace that CBRE would be used for the refinance transaction. None of them could testify they personally provided any such notice whatsoever to CityPlace (whether written or otherwise).

For example, Gary Routzahn, Berkadia's Senior Vice President, testified he has no knowledge of either (1) when Wells Fargo appointed its Qualified Appraiser for the refinance; or (2) when Wells Fargo notified CityPlace of the identity of its Qualified Appraiser for the refinance. SOF ¶ 45. Mr. Routzahn further testified he believed his colleague Kristie Alvelo provided the requisite notification to CityPlace. SOF ¶ 46.

In turn, Kristie Alvelo—who testified as Wells Fargo's designated Corporate Representative about the issue of notice—conceded she never notified CityPlace (either orally or in writing) that Wells Fargo appointed CBRE as its Qualified Appraiser for purposes of the refinance. SOF ¶¶ 47–48. Ms. Alvelo believed Lorena Trujillo, outside counsel for Berkadia, had notified CityPlace of the identity of CBRE for the refinance. SOF ¶ 49.

But Ms. Trujillo testified that she never communicated to CityPlace, either orally or in writing, that Wells Fargo had appointed CBRE as its Qualified Appraiser for purposes of the refinance. SOF ¶ 50. Taken together, none of the witnesses knew anything about the "phantom" notice Wells Fargo allegedly provided CityPlace about the identity of Wells Fargo's appraiser for purposes of the refinancing. In summary, Wells Fargo proffers no evidence that it complied with § 4.9(g).

    **3.**     *Wells Fargo's failures to timely appoint and identify its Qualified Appraiser constitute failures to satisfy conditions precedent which result in CityPlace's appraisal being "conclusive and binding" under § 4.9(g)(iv).*

Wells Fargo's requirements to both (1) timely appoint a Qualified Appraiser; and (2) timely identify the appraiser to CityPlace via proper notice, was a condition precedent to triggering the competing appraisal process under § 4.9(g).[7] Because Wells Fargo failed to timely appoint its Qualified Appraiser and failed to timely deliver proper written notice of the identity of its Qualified Appraiser, the competing appraisal process under § 4.9(g) was not triggered. As a result, Wells Fargo was precluded from obtaining its own appraisal, challenging CityPlace's appraisal, and/or requesting the appointment of a third-party appraiser. Accordingly, pursuant to § 4.9(g)(iv), the appraisal obtained by CityPlace is "conclusive and binding" for purposes of determining the Property's Appraised Value and the Net Refinancing Proceeds. *See* § 4.9(g)(iv) ("If either Lender or Borrower does not appoint a Qualified Appraiser within the required time period, the MAI Appraisal obtained by Lender or Borrower . . . shall be the only MAI Appraisal used to calculate

---

[7]Specifically, in § 4.9(g)(iii), the parties agreed to a procedure whereby if both parties timely appointed and identified their respective Qualified Appraisers, and timely provided their MAI Appraisals, but there was a more than 5% difference in the two appraisals, then a third-party appraiser would be appointed to resolve the differences in valuation. However, this third-party appraisal process was conditioned on both parties having strictly complied with the timing and disclosure requirements. *See* § 4.9(g)(ii)-(iii).

the Net Refinancing Proceeds. **In such case, the determination so made shall be conclusive and binding on Borrower and Lender**.") (emphasis added).

Under New York law,[8] "a condition precedent is 'an act or event, other than a lapse of time, which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises.'" *MHR Capital Partners LP v. Presstek, Inc.,* 12 N.Y.3d 640, 645 (2009) (quoting *Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.,* 86 N.Y.2d 685, 690 (1995)); *Accadia Site Contracting, Inc. v. Erie Cty. Water Auth.,* 983 N.Y.S.2d 387, 388 (N.Y. App. Div. 2014) (contract provisions requiring written notice within specified time period were "conditions precedent to suit or recovery"). Where a contract contains "a condition precedent-type notice provision setting forth the consequences of a failure to strictly comply," strict compliance with the notice provision is required. *Peter Scalamandre & Sons, Inc. v. FC 80 Dekalb Assocs., LLC*, 12 N.Y.S.3d 133, 136 (N.Y. App. Div. 2015); *Oppenheimer & Co.,* 86 N.Y.2d at 691 (holding that conditions precedent are subject to the "requirement of strict compliance").

The failure by one party to strictly comply with a condition precedent "excuses performance by the other party whose performance is so conditioned." *Utica Mut. Ins. Co. v. Clearwater Ins. Co.*, 906 F.3d 12, 22 (2d Cir. 2018); *Great Canal Realty Corp. v. Seneca Ins. Co., Inc.,* 5 N.Y.3d 742, 743 (2005) ("a failure to comply with a condition precedent which, as a matter of law, vitiates the contract."); *E. Baby Stores, Inc. v. Cent. Mut. Ins. Co.*, 07 CIV. 3890 (LAP), 2008 WL 2276527, at *2 (S.D.N.Y. June 2, 2008), *aff'd*, 337 F. App'x 10 (2d Cir. 2009) (failure to timely provide contractually required notice constitutes a failure to satisfy a condition precedent requiring dismissal of claim); *see e.g., Garden Aire Vill. S., Condo. Assoc., Inc. v. QBE Ins. Corp.*, 10-61985-CIV, 2013 WL 12086654, at *2 (S.D. Fla. May 10, 2013) (holding that failure to satisfy

---

[8] The LMA is governed by New York law. *See* LMA, § 6.10.

conditions precedent under insurance policy eliminated any obligation on insurer to conduct appraisal requested by policy holder). Express conditions precedent "must be literally performed; substantial performance will not suffice," and "[f]ailure to strictly comply with such provisions generally constitutes a waiver of a claim." *Schindler Elevator Corp. v. Tully Const. Co., Inc*., 139 A.D.3d 930, 931, 30 N.Y.S.3d 707, 709 (N.Y. App. Div. 2016) (citations omitted). Well-recognized "linguistic conventions" of condition precedents include: "'if,' 'on condition that,' 'provided that,' 'in the event that,' and 'subject to,'" and make plain that a party's obligation to perform under the contract does not arise if the conditions precedent are not satisfied. *Bank of New York Mellon Tr. Co., N.A. v. Morgan Stanley Mortg. Capital, Inc.,* 821 F.3d 297, 305–06 (2d Cir. 2016) (citing *Oppenheimer & Co.,* 86 N.Y.2d at 691 (recognizing "if" and "unless and until" as "unmistakable language of condition")); *Israel v. Chabra,* 537 F.3d 86, 93 (2d Cir. 2008) (noting that use of similar conditional language will suffice); *see also ALJ Capital I, L.P. v. David J. Joseph Co.,* 851 N.Y.S.2d 154, 155 (N.Y. App. Div. 2008) (holding that a written notice provision constituted a condition precedent "despite the lack of explicitly conditional language").

Under § 4.9(g), either party's failure to comply with the conditions precedent of timely appointing its Qualified Appraiser and providing timely written notice of the identity of its Qualified Appraiser **shall constitute a waiver of that party's right to obtain their own appraisal and challenge the appraisal obtained by the other party**. *See* § 4.9(g)(i) ("Within ten (10) Business Days after Lender's receipt of Borrower's written notice of an intended Refinance, Lender shall appoint a Qualified Appraiser . . . and Borrower shall appoint a second Qualified Appraiser. Each party shall notify the other of the identity of its Qualified Appraiser so engaged within fifteen (15) Business Days after receipt of the notice regarding the intended Refinance."); *Id.* § 4.9(g)(iv) ("***If*** either Lender or Borrower does not appoint a Qualified Appraiser within the

required time period, the MAI Appraisal obtained by Lender or Borrower . . . ***shall*** be the only MAI Appraisal used to calculate the Net Refinancing Proceeds.") (emphasis added).

The undisputed facts, set forth *supra,* conclusively establish that Wells Fargo failed to comply with the conditions precedent of (1) timely appointing a Qualified Appraiser; and (2) timely and properly notifying CityPlace of the identity of its Qualified Appraiser, such that the competing appraisal process under § 4.9(g)(ii)-(iii) was never triggered. Because Wells Fargo failed to timely trigger the competing appraisal process, CityPlace had no duty to respond to Wells Fargo's untimely requests for information to prepare its untimely appraisal. Further, it cannot be disputed that CityPlace timely complied with its obligation of notifying Wells Fargo of its failures to (1) timely appoint a Qualified Appraiser; and (2) timely notify CityPlace of the identity of its Qualified Appraiser. Because Wells Fargo's failure to satisfy its conditions precedent precluded the third-party appraisal process from being triggered, the appraisal obtained by CityPlace is "conclusive and binding" for purposes of determining the Property's Appraised Value and the Net Refinancing Proceeds.

## **CONCLUSION**

For the foregoing reasons, Wells Fargo's Counterclaim for a favorable declaration cannot be sustained as a matter of law, and summary judgment should be granted in favor of CityPlace.

## **REQUEST FOR HEARING**

Pursuant to Local Rule 7.1(b)(2), CityPlace respectfully requests oral argument. The parties should have the opportunity to present argument and respond to the Court's questions. CityPlace estimates that one hour and a half will be necessary to complete argument on this motion.

Dated: May 14, 2019.

Respectfully submitted,

By: /s/ Bruce A. Weil
BRUCE ALAN WEIL, ESQ.
Florida Bar No. 816469
bweil@bsfllp.com
STEPHEN N. ZACK
Florida Bar No. 145215
szack@bsfllp.com
ROBERT G. KEEFE
Florida Bar No. 1010751
rkeefe@bsfllp.com
LASELVE E. HARRISON
Florida Bar No. 112537
lharrison@bsfllp.com

BOIES SCHILLER FLEXNER, LLP
100 S.E. 2nd Street – Suite 2800
Miami, FL 33131
Telephone:    (305) 539-8400
Facsimile:    (305) 539-1307

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 14th day of May, 2019, a true and correct copy of the foregoing was filed with the Clerk of Court via the Court's CM/ECF system for electronic service on all counsel of record.

/s/ *Bruce Alan Weil*
Bruce Alan Weil

18