**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.  18-CV-81689-ROSENBERG/REINHART**

CITYPLACE RETAIL, LLC,

      Plaintiff,

v.

WELLS FARGO BANK, N.A., AS
TRUSTEE FOR THE REGISTERED
HOLDERS OF CREDIT SUISSE
FIRST BOSTON MORTGAGE
SECURITIES CORP., COMMERCIAL
MORTGAGE SECURITIES CORP.,
COMMERCIAL MORTGAGE
PASS-THROUGH CERTIFICATES,
SERIES 2007-C1,

      Defendant.

_____/

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY**
**JUDGMENT AND PLAINTIFF'S MOTION FOR SANCTIONS**

This matter is before the Court on Plaintiff's Motion for Summary Judgment [DE 88].

The Motion has been fully briefed.  For the reasons set forth below, the Motion is denied.

**I.      BACKGROUND[1]**

This action concerns certain real property located in West Palm Beach, Florida, known

as CityPlace, which is also the name of the Plaintiff in this case.  DE 89 at 2.   In 2011, CityPlace

entered into a security modification agreement with its mortgage holder and, in connection with

that agreement, a company known as Berkadia Commercial Mortgage became the servicer of the

mortgage.  *Id.*  Also in connection with the agreement, the Defendant in this case, Wells Fargo,

---

1 This background information is taken from the undisputed facts supporting Plaintiff's Motion.

became the trustee for the mortgage holder. *Id.* The 2011 modification agreement is important

to this case; the Court refers to the modification agreement as the "Agreement." *See id.*

The Agreement had a fixed maturity date of December 11, 2018. *Id.* As the date for

maturity drew near, CityPlace began the process (in September) of refinancing its loan through

a new lender. *See id.* at 3. Refinancing required an appraisal, and the Agreement contained a

detailed appraisal process for CityPlace and Wells Fargo to follow, which included the use of

multiple appraisers to value the CityPlace property. *See id.* at 2-3. Wells Fargo, by virtue of its

selection of Berkadia as servicer, delegated its appraisal responsibilities under the Agreement to

Berkadia. *See id.* The parties disagree over whether Berkadia complied with its responsibilities

under the Agreement—over whether Berkadia followed the refinancing appraisal process in the

Agreement. *Id.* at 2-5.

The refinancing appraisal process in the Agreement is the central issue in dispute in this

case. The appraisal process was necessary to determine the payoff amount that CityPlace had to

pay to Wells Fargo. DE 1-2 at 6. Without the payoff amount, CityPlace could not refinance its

loan through a new lender. *Id.* Between September and December of 2018, the parties litigated

Berkadia's compliance with the appraisal process, ultimately resulting in an emergency motion

for preliminary injunction, by CityPlace, wherein CityPlace sought to compel Wells Fargo to

accept CityPlace's position on the appraisal process so that CityPlace could refinance the

property. DE 14. That specific dispute was ultimately resolved by the parties insofar as Wells

Fargo permitted CityPlace to satisfy its loan and refinance the property (using a disputed number

for the payoff amount), subject to this Court's determination of the proper payoff amount post-

closing. DE 26. Plaintiff's Motion argues that this Court may find as a matter of law that

Plaintiff's payoff amount (and corresponding appraisal) is the correct amount under the Agreement.

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The existence of a factual dispute is not by itself sufficient grounds to defeat a motion for summary judgment; rather, "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A dispute is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (citing *Anderson*, 477 U.S. at 247-48). A fact is material if "it would affect the outcome of the suit under the governing law." *Id.* (citing *Anderson*, 477 U.S. at 247-48).

In deciding a summary judgment motion, the Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006). The Court does not weigh conflicting evidence. *See Skop v. City of Atlanta*, 485 F.3d 1130, 1140 (11th Cir. 2007). Thus, upon discovering a genuine dispute of material fact, the Court must deny summary judgment. *See id.*

## III.    ANALYSIS OF THE FACTS

Before the Court analyzes the parties' legal arguments in this case, it is necessary to set forth (1) the crux of the dispute between the parties, (2) CityPlace's version of the facts, and (3) Wells Fargo's version of the facts. After the Court discusses these three areas, the Court addresses the parties' respective legal arguments.

**(1) The Crux of the Dispute Between the Parties**

Stated simply, CityPlace contends that Wells Fargo lost its chance to challenge CityPlace's appraised value of its property. Section 4.9 of the Agreement governs the procedure for refinancing appraisals. DE 89-2 at 15. Under Section 4.9, CityPlace was required to notify Wells Fargo of its intent to refinance. *Id.* CityPlace undisputedly did so. DE 119 at 2. Subsequent to this notification, CityPlace was required to appoint an appraiser. DE 89-2 at 17. CityPlace was also required to disclose its appraiser's identity and to provide Wells Fargo with the appraiser's report. *Id.* CityPlace undisputedly did both of these things. DE 119 at 3.

The Agreement imposes counter-requirements on Wells Fargo, once Wells Fargo was notified of CityPlace's intent to refinance. DE 89-2 at 17. Wells Fargo was required to appoint an appraiser within a certain timeframe, and the parties dispute whether Wells Fargo did so. Wells Fargo was required to notify CityPlace of its appraiser's identity, and the parties dispute whether Wells Fargo did so in a timely fashion.

CityPlace's position that Wells Fargo failed to comply with the appraiser appointment and notification process comes with a powerful ramification. Section 4.9(g) of the Agreement addresses the situation where "either Lender or Borrower does not appoint a Qualified Appraiser within the time period," and the result is that "the MAI Appraisal obtained by Lender or Borrower . . . shall be the *only* MAI Appraisal used to calculate the Net Refinancing Proceeds." DE 89-2 at 17 (emphasis added). This forms the premise for CityPlace's position that only CityPlace's appraisal may be used in the refinancing calculations.

4

**(2) CityPlace's Version of the Facts**

CityPlace contends that the parties' transaction is unremarkable, other than for the fact that Berkadia made a systemic series of errors related to untimeliness. The facts, as presented by CityPlace, do not focus on the reason CityPlace wanted to refinance its property or the context surrounding CityPlace's decision to do so. Instead, CityPlace's rendition of the record evidence focuses on its own compliance with the Agreement's provisions for refinancing and Berkadia's failure to comply. More specifically, CityPlace contends that Berkadia never appointed an appraiser nor timely informed CityPlace of the identity of an appraiser. DE 89 at 6-7.

There is certainly record evidence to support CityPlace's position. By way of example, the parties agree[2] that the latest date Berkadia could appoint an appraiser was September 24, 2018. On October 5th—well past the aforementioned deadline—Berkadia sent an e-mail to CityPlace wherein Berkadia stated that "Berkadia *will* appoint an MAI appraiser." DE 119 at 4 (emphasis added). Thus, Berkadia's statement that it *would* appoint an appraiser is evidence that no appraiser had been appointed by September 24th, and other record evidence supports this inference as well. *E.g.*, DE 90 at 6-7. Furthermore, it is undisputed that Berkadia never provided CityPlace with written notice of the identity of its appraiser during the relevant time period.[3] DE 119 at 5. Finally, it is undisputed that Berkadia never provided CityPlace with a copy of its own appraisal during the relevant time period. *See* DE 89 at 9. In summary, it is CityPlace's record evidence that it complied with all necessary refinancing appraisal requirements, in a timely fashion, and Berkadia did not.

---

2 DE 119 at 3.
3 The specific dates for the relevant time periods in this case are in dispute.

The Motion before the Court, however, is brought by CityPlace. Accordingly, the Court cannot view the facts in the light most favorable to CityPlace. The Court must view the facts in the light most favorable to Wells Fargo. *Davis*, 451 F.3d at 763. Viewed in that light, the facts are very different, and the Court summarizes those facts below.

### (3) **Wells Fargo's Version of the Facts**

The thrust of Wells Fargo's position is that CityPlace manipulated events in order to gain an unfair financial benefit in the refinancing of its property. To be clear, the Court sets forth the record evidence in the light most favorable to Wells Fargo because it is required to do so—the Court expresses no opinion on whether the facts set forth blow are true or credible.

In May of 2018, CityPlace applied for a zoning change to alter a substantial portion of the CityPlace property. DE 119 at 10. More specifically, a building that previously contained a Macy's department store was proposed, by CityPlace, to be rezoned to allow a residential apartment tower to be constructed in the space. *Id.* Such a rezoning stood to significantly increase the value of the CityPlace property. *See generally* DE 119. The rezoning application process proved to be promising insofar as CityPlace began to represent to potential refinancing lenders that a new three-hundred-unit apartment would be built on the old Macy's site. *Id.* Similarly, CityPlace began to produce marketing materials that assumed the new apartment building would be constructed. *Id.*

With the deadline for CityPlace to refinance approaching, CityPlace had a window of opportunity. If CityPlace could appraise the property with the old Macy's property in-place and then satisfy its existing loan balance using that appraisal, CityPlace stood to benefit if the zoning change was approved around the time of the actual refinancing, but *after* the payoff number had

6

already been computed using a pre-zoning change number. For CityPlace to benefit from this plan, it would need to use an appraiser who would only appraise the value "as-is," without consideration of the effect of a zoning change, and it would need to have this appraisal influence the payoff amount. Once CityPlace had such an appraisal, CityPlace would have a need for speed—a need to finalize the appraisal process before the rezoning application (if approved) would definitively influence the "as-is" value of the property. CityPlace had certain elements in its favor to accomplish this plan. For example, the Agreement mandated that the appraisal of the property would be "as-is." The strict timeline in the Agreement also would have favored CityPlace's plan—CityPlace could use the strict timeline to bring the appraisal process to a close before the rezoning application was granted. And that is precisely what happened.

The appraiser appointed by CityPlace was never told about CityPlace's rezoning application; by the time the appraiser learned of the rezoning application his appraisal had already been authored and transmitted by CityPlace. DE 119 at 11. CityPlace's appraiser testified that had he known about the pending rezoning application he would have considered it,[4] which is significant insofar as record evidence supports the proposition that *probable* changes in zoning should influence the "as-is" value of a property. DE 103-2 at 10-12. CityPlace also affirmatively refused to provide information to Berkadia in early October that Berkadia represented it needed to obtain its own appraisal on the property; CityPlace did not provide Berkadia with the requested information until mid-November, long after the date when, according to CityPlace, Wells Fargo had lost its chance to dispute CityPlace's appraisal number. *Id.*

---

4 DE 119 at 11.

On November 5th—a date after CityPlace's appraisal—the City of West Palm Beach approved CityPlace's rezoning application. DE 89 at 11. Record evidence supports the proposition that, once the application was approved, the "as-is" value of the CityPlace property was greatly increased and CityPlace's prior appraisal was outdated. *E.g.*, DE 103-2. Nonetheless, CityPlace did not seek to amend its earlier appraisal, nor did CityPlace permit Wells Fargo to obtain its own appraisal based upon this shift in the value of the CityPlace property— instead CityPlace insisted that the appraisal process was concluded and that its (old) number was the number that would be used in determining a payoff amount. This position, by CityPlace, is consistent with Wells Fargo's theory that CityPlace acted to manipulate events so that it could reap a financial windfall in the refinancing process; Wells Fargo's theory—supported by evidence in the record—must be considered by this Court under the appropriate legal framework.

Finally, the Court addresses the particulars of Wells Fargo's position on its own timeliness. It is Wells Fargo's position that CityPlace exhibited a kind of willful blindness in the course of its dealings with Berkadia. Relatedly, it is Wells Fargo's position that CityPlace always had actual notice of who the Wells Fargo/Berkadia appraiser was because Berkadia always used the same appraiser. According to Wells Fargo, Berkadia's appointment of its appraiser (Mr. Stuart Lieberman) was akin to a general appointment, and Mr. Lieberman was "the designated appraiser" for all purposes for the CityPlace property. DE 103-35 at 3. CityPlace had worked with Mr. Lieberman before on Wells Fargo appraisals; Mr. Lieberman prepared an appraisal for the property as recently as August of 2018. *Id.* Indeed, CityPlace specifically inquired with Berkadia in August as to whether Mr. Liberman's August appraisal could be used in the future

refinancing process,[5] and CityPlace knew that Wells Fargo was awaiting an appraisal on the property from Mr. Lieberman. DE 119 at 9. Record evidence also supports the proposition that CityPlace *told* its appraiser that Mr. Lieberman was the Wells Fargo appraiser while the CityPlace appraisal was being drafted.[6] DE 103-8 at 7-9. In summary, there is record evidence for the proposition that, even if Berkadia did not formally disclose the identity of its appraiser pursuant to the terms of the Agreement, CityPlace had actual knowledge of who the Berkadia appraiser was. With respect to Berkadia's delay in producing an appraisal to CityPlace, Berkadia lays the blame for this on CityPlace due to CityPlace's refusal to provide information to Berkadia that Berkadia needed to obtain the appraisal.

## IV.    LEGAL ANALYSIS AND DISCUSSION

CityPlace's legal position can be stated succinctly: CityPlace complied with the appraisal requirements in the Agreement and Wells Fargo did not; therefore, because Wells Fargo did not comply, the Agreement requires that CityPlace's appraisal govern the refinancing process. The requirements of the Agreement that CityPlace contends Wells Fargo breached through delay are the requirement to appoint an appraiser, the requirement to disclose the appraiser, and the requirement to provide an appraisal. Wells Fargo's position, however, requires more in-depth discussion.

With respect to the appointment and disclosure of an appraiser, Wells Fargo concedes that CityPlace never received written notice of the Wells Fargo appraiser as the Agreement

---

5 The request was rejected.
6 The Court rejects the inferences about this evidence in CityPlace's favor discussed on page 7 of CityPlace's Reply; the Court must view inferences of the evidence in Wells Fargo's favor.

requires.  Under New York law,[7] however, "[s]trict compliance with contract notice provisions is not required in commercial contracts when the contracting party received actual notice and suffers no detriment or prejudice by the deviation."  *J.C. Studios, LLC v. Telenext Media, Inc.*, 932 N.Y.S.2d 760, at \*7 (Sup. Ct. 2011) (citing *Iskalo v. Elec. Tower LLC v. Stantec Consulting Servs., Inc.*, 79 A.D.3d 1605, 1607 (Sup. Ct. 2010)); *see also MyPlayCity, Inc. v. Conduit Ltd.*, No. 10 Civ. 1615 (CM), 2012 WL 1107648, at \*10 (S.D.N.Y. Mar. 30, 2012) ("As put by the Second Circuit, a notice provision should not be construed 'as if it were a common law pleading requirement under which every slip would be fatal.'"); *Ives v. Mars Metal Corp.*, 196 N.Y.S.2d 247, 249 (Sup. Ct. 1959) ("Where actual notice . . . has in fact been given, the form is of little import. . . . [I]t would be hypertechnical in the extreme to hold otherwise.").

In Reply, CityPlace does not dispute New York law on this point,[8] but instead contends that, as a factual matter, the record evidence does not support the proposition that CityPlace had actual notice of Wells Fargo's appraiser.  The Court does not agree.  The Court must view the evidence in the record and the parties' history of dealings in the light most favorable to Wells Fargo.  Viewed in this light, for the reasons set forth in Section III, there is at least a question of fact as to whether CityPlace had actual knowledge of the identity of the appraiser appointed by Berkadia and Wells Fargo.[9]  Therefore, as to this point, CityPlace's Motion for Summary Judgment is denied.

---

7 The parties agree that, pursuant to the terms of the Agreement, New York law controls.  DE 89-2 at 27; DE 88 at 19.

8 CityPlace contends that, unlike cases such as *J.C. Studios*, Berkadia never "actually communicated" the required information.  DE 125 at 7.

9 For the same reasons, there is also a dispute of fact as to whether CityPlace suffered prejudice as a result of Berkadia's failure to provide written notice.  Finally, in the alternative, there is at least a question of fact whether Wells Fargo can be deemed to have complied with the notice provisions because of Wells Fargo's substantial compliance with the same.  *See Peter Scalamandre & Sons, Inc. v. FC 80 Dekalb Associates, LLC*, 12 N.Y.S.3d 133, 137 (App. Div. 2015).

With respect to Wells Fargo's failure to produce an appraisal within the time requirements of the Agreement, Wells Fargo contends that this failure is attributable to CityPlace—not Wells Fargo. According to CityPlace, the Wells Fargo appraisal was due by October 24, 2018. DE 89 at 9. Berkadia requested information from CityPlace (for the preparation of the appraisal) on October 5, 2018. DE 119 at 9. CityPlace's response was not the requested information; CityPlace's response was to inform Berkadia that Berkadia had lost its chance to prepare an appraisal. *Id.* Record evidence supports the proposition that Berkadia could not complete its appraisal until November when it did receive all necessary, requested information from CityPlace. *See* DE 104-16.

CityPlace's refusal in October to work with Wells Fargo must be considered in light of Section 4(g) of the Agreement which required CityPlace to respond to requests for information with a reasonable effort. A party cannot claim a breach of contract when it has taken acts to frustrate or prevent the condition from occurring. *See ADC Orange, Inc. v. Coyote Acres, Inc.*, 7 N.Y.3d 484, 490 (2006). All contracts contain an implicit covenant of good faith and fair dealing wherein "a party shall do [nothing] which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *ABN AMRO Bank, N.V. v. MBIA Inc.*, 17 N.Y.3d 208, 223 (2011). Viewing the record in the light most favorable to Wells Fargo, there is at least a dispute of material fact as to whether Wells Fargo's appraisal was delayed as a result of CityPlace's actions and CityPlace's own breaches of contract. Accordingly, CityPlace's Motion for Summary Judgment is denied as to this issue.

Wells Fargo provides two additional, independent grounds upon which Plaintiff's Motion for Summary Judgment should be denied. The first is the doctrine of disproportionate forfeiture. The second is the appropriateness of CityPlace's appraisal. Each is discussed in turn.

Disproportionate Forfeiture

The doctrine of disproportionate forfeiture is defined under New York law as follows:

> To the extent that the non-occurrence of a condition would cause disproportionate forfeiture, a court may exclude the non-occurrence of that condition unless its occurrence was a material part of the agreed exchange.

*Pramco III, LLC v. Partners Trust Bank*, 842 N.Y.S.2d 174, 182 (Sup. Ct. 2007). The doctrine of disproportionate forfeiture applies when the party seeking to excuse the nonoccurrence of a condition precedent will "los[e] [its] right to the agreed exchange after [it] has relied substantially, as by preparation or performance on the expectation of that exchange"; the party "conferred a benefit on the other party"; and the unsatisfied condition is not "a material part of the agreed exchange." *Id.* at 185.

In *Danco Electrical Contractors v. Dormitory Authority*, 75 N.Y.S.3d 28, 29 (App. Div. 2018), the plaintiff-contractor failed to submit verified statements contesting the defendant's calculations of the amounts that the defendant would pay for extra work that the plaintiff had completed pursuant to a series of change orders. It was undisputed that the submission of such verified statements was a condition precedent to plaintiff's right to recover the extra payments and that plaintiff had failed to submit them. *Id.* The trial court barred the plaintiff from recovering the additional payments, citing the plaintiff's failure to strictly comply with the condition precedent. The appellate court, however, reversed, holding that the "plaintiff should be excused from the nonoccurrence of that condition, because otherwise it would suffer a

12

disproportionate forfeiture, and the occurrence of the condition was not a material part of the exchange." *Id*. The court held that "the failure to strictly comply with a condition precedent should be excused to avoid a disproportionate forfeiture under the circumstances of a case such as this, where the noncompliance is *de minimis* and defendant has shown no prejudice whatsoever." *Id*. Wells Fargo argues that cases such as *Danco* are analogous to this case and are therefore persuasive. Taking all inferences in the record in the light most favorable to Wells Fargo, the Court can see no immediate reason to disagree.

CityPlace's arguments to the contrary have no merit. First, CityPlace cites to *Oppenheimer & Co., Inc. v. Oppenheim Co.*, 86 N.Y.2d 685, 695 (N.Y. App. Div. 1995) for the proposition that the disproportionate forfeiture doctrine does not apply to express forfeiture clauses (like Section 4 in the Agreement), because "[if defendant was] dissatisfied with the consequences of [its] agreement, the time to say so was at the bargaining table." CityPlace relies upon its *Oppenheimer* quotation because in that case the court did not apply the disproportionate forfeiture doctrine to an express forfeiture clause. *Id.* CityPlace omits, however, a sentence preceding its quotation which reads: "[W]e are not dealing here with a situation where plaintiff stands to suffer some forfeiture or undue hardship, [thus] we perceive no justification for engaging in a [materiality] analysis." *Id.* Indeed, the *Oppenheimer* court affirmed the viability of the doctrine in its decision: "[W]e held that the prior courts properly invoked the rule that equity 'relieves against . . . forfeitures of valuable lease terms when default in notice has not prejudiced the landlord." *Id.* And CityPlace's quotation actually correspond to a completely different issue before the court—the issue of contractual interpretation. *Id.*

Next, CityPlace attempts to distinguish *Danco* by arguing that, unlike *Danco* (where the clauses were not material), the appointment/disclosure requirements in its Agreement were material. If a term is material, it is so important to an agreement that, without the term, the Agreement cannot be enforced as a matter of law. *E.g., Express Indus. & Terminal Corp. v. N.Y. Dep't of Trans.*, 93 N.Y.2d 584, 589 (App. Div. 1999) ("To create a binding contract, there must be a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms."); *Cobble Hill Nursing Home, Inc. v. Henry & Warren Corp.*, 74 N.Y.2d 475, 482 (App. Div. 1989) ("If an agreement is not reasonably certain in its material terms, there can be no legally enforceable contract.").[10] CityPlace's stated position then, is that Wells Fargo's disclosure of its appraiser's identity[11] was so important to the parties' bargain that, without that disclosure clause in the Agreement, the sixty-six page Agreement would be unenforceable. For authority for this proposition, CityPlace cites to a one-paragraph decision[12] where a court upheld a mandatory notice provision in a specialized area of the law—delay damages in construction contracts—from which this Court can glean no support for CityPlace's argument. *E.g.,* N.Y. JUR. 2D PUBLIC WORKS & CONTRACTS § 86 ("Where a contract provision provides that no charges may be made by the contractor for any delays . . . such a provision . . . is a complete bar to recover of damages.").

Here, there is a least a question of material fact as to whether the doctrine of disproportionate forfeiture applies. *Compare Argent Acquisitions, LLC v. First Church of*

---

10 *See also Miller v. Tawil*, 165 F. Supp. 2d 487, 494 n.11 (S.D.N.Y. 2001) (noting that New York courts use the term "material" and "essential" interchangeably).

11 The Agreement's requirement for the parties to obtain appraisals is another matter—that matter raises questions of fact to be resolved at trial where the blame for delay can be attributed to the proper party.

12 *Morelli Masons, Inc. v. Peter Scalamandre & Sons, Inc.*, 742 N.Y.S.2d 6 (App. Div. 2002).

*Religious Science*, 990 N.Y.S.2d 1, 4 (App. Div. 2014) ("[Material terms] which must be set forth in writing are 'those terms customarily encountered in' a particular transaction."), *with Pramco III*, 842 N.Y.S. 2d at 186 (holding that for the court to determine whether a term was material under the doctrine of disproportionate forfeiture, the court would need to hear evidence at trial on the parties' dealings). Clearly Wells Fargo had the ability to produce an appraisal prior to a refinancing deadline—Wells Fargo did so. Clearly CityPlace was not prevented by Wells Fargo from refinancing without penalty—CityPlace did so. Clearly the CityPlace appraisal was based upon an outdated zoning classification (at the time of refinancing)—it was finalized before the zoning change was approved. The difference between CityPlace's appraisal and Wells Fargo's appraisal is large: thirty-five million dollars. One issue, therefore, for the Court to decide at trial is whether Wells Fargo's disclosure delay of a few days warrants a thirty-five-million-dollar reduction in the appraised value of the property, or whether such a result is precluded under New York law pursuant to the doctrine of disproportionate forfeiture.[13] At the summary judgment stage, there is at least a question of fact as to whether Wells Fargo's delay was *de minimus* and whether the delay imposed actual prejudice upon CityPlace.

CityPlace's Appraisal

As a second independent basis for denying CityPlace's Motion for Summary Judgment, Wells Fargo argues that CityPlace's appraisal is incompatible with the Agreement. It is

---

[13] CityPlace also briefly makes the argument that because Wells Fargo may be able to file a negligence lawsuit in the future to recover its damages or an insurance policy may ultimately cover damages stemming from this case, Wells Fargo "will [not] suffer disproportionate forfeiture." DE 125 at 9. The Court rejects this argument with minimal comment for three reasons. First, CityPlace's one-paragraph argument contains no citations to authority. Second, CityPlace makes the implicit assumption that Wells Fargo would prevail in a future lawsuit or that an insurance claim would be approved. Third, if CityPlace's reasoning is taken to its ultimate conclusion, a wrongfully terminated employee might not "suffer" because he could seek unemployment benefits, or a disabled individual might not "suffer" if he had disability insurance.

undisputed that CityPlace's appraisal did not take into account the possible zoning change of the property. Section 4.9(g)(v) of the Agreement requires appraisals to comply with the Uniform Standards of Professional Appraisal and Practice (USPAP) and the Financial Institutions Reform, Recovery, and Enforcement Act (FIRREA). Under USPAP and FIRREA, an appraisal must determine the market value of the property. 75 Fed. Reg. 77459. Under those provisions, however, if there is a pending zoning application, an appraiser must analyze the effect of the zoning application on the market value of the property. *Id.* ("An institution should understand the real property's 'as is' market value and should consider the prospective market value . . . Prospective market value opinions should be based upon current and reasonably expected market conditions."). Because it is undisputed that CityPlace's appraiser did not take into account or consider a possible zoning change in his appraisal, there is at least a question of fact as to whether CityPlace's appraisal is valid under the Agreement.[14] The Court denies Plaintiff's Motion for Summary Judgment on this basis as well.

## V. CONCLUSION

Therefore, for all of the reasons set forth above it is **ORDERED AND ADJUDGED** that Plaintiff's Motion for Summary Judgment [DE 88] is **DENIED**. CityPlace's Motion for Sanctions [DE 131] is also **DENIED**.

**DONE and ORDERED** in Chambers, West Palm Beach, Florida, this 7th day of August, 2019.

ROBIN L. ROSENBERG
Copies furnished to Counsel of Record          UNITED STATES DISTRICT JUDGE

---

14 The Court also notes that while CityPlace informed its new lender's appraiser of the zoning change application, CityPlace did not inform its own appraiser of the same.

16