**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 9:18-CV-81689-ROSENBERG/REINHART**

CITYPLACE RETAIL, L.L.C.,
*a Foreign Limited Liability Company,*

   Plaintiff,

v.

WELLS FARGO BANK, N.A.,
*as Trustee for the Registered Holders*
*of Credit Suisse First Boston*
*Mortgage Securities Corp., Commercial*
*Mortgage Pass-Through Certificates,*
*series 2007-C1,*

   Defendant.

_____/

**THE TRUSTEE'S VERIFIED MOTION FOR ATTORNEYS' FEES**

   Pursuant to Local Rule 7.3 of the Southern District of Florida, defendant Wells Fargo Bank, N.A., as Trustee for the Registered Holders of Credit Suisse First Boston Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates, Series 2007-C1 (the "Trustee") moves this Honorable Court for entry of an order and judgment awarding the Trustee its attorneys' fees and non-taxable costs against plaintiff CityPlace Retail, LLC ("CityPlace"). In support hereof, the Trustee states:

**INTRODUCTION**

   On May 7, 2020, this Court entered Final Judgment in this matter in favor of the Trustee and against CityPlace. ECF No. 229. The Final Judgment was entered pursuant to the Court's Memorandum Opinion entered on April 30, 2020 ("Opinion"). ECF No. 225. The Court dismissed all of CityPlace's remaining claims, and the Court granted a declaratory judgment enforcing the

1

terms of the Loan Agreement[1].  ECF No. 229.  In accordance with its rights under Section 10.13 of the Loan Agreement, the Trustee now seeks to recover all of its fees and expenses that it incurred to enforce the terms of the Loan Agreement.

In support of this Motion, the Trustee attaches the following exhibits:

- Exhibit A is a copy of the Loan Agreement;

- Exhibit B is a spreadsheet that sets forth the number of hours reasonably expended by each attorney, paralegal, and law clerk in litigating this matter along with each timekeeper's hourly rate for the period October 2018 through June 2020;

- Exhibit C is a composite exhibit with all of the invoices (redacted for privilege) of the Trustee's counsel; and

- Exhibit D is a composite exhibit showing each timekeeper's professional biography.

## STATEMENT OF FACTS

### A.  Procedural History

CityPlace filed this action in Florida Circuit Court on December 7, 2018.  The Trustee removed the action to the United States District Court for the Southern District of Florida on December 11, 2018.  Opinion at 4.  CityPlace and the Trustee filed cross-claims against each other for declaratory relief.  *Id.* at 4-5.  Following an eight-day non-jury jury trial, this Court entered Final Judgment in favor of the Trustee, dismissing CityPlace's claims with prejudice and entering a declaratory judgment in favor of the Trustee on the Trustee's claim.  ECF No. 229.  The Final Judgment was entered pursuant to the Court's Memorandum Opinion.  ECF No. 225.  In the

---

[1]      "The Loan Agreement" refers to the "Amended and Restated Loan Agreement, dated February 27, 2007.  *See* Opinion ¶ 5.

Memorandum Opinion, the Court deferred ruling on the issue of either party's entitlement to attorneys' fees and directed the parties to file a motion for attorneys' fees, if necessary, consistent with the rulings made in the Memorandum Opinion.  ECF No. 225 at 45.

### B.    The Court's Factual Findings

On October 6, 2006, Column Financial (the "Initial Lender") advanced CityPlace a loan. Opinion ¶ 3.  At all relevant times, the Loan has been secured by a mortgage on the real property commonly known as "CityPlace" (the "Property").  *Id.* ¶ 4.  CityPlace and the Initial Lender entered into the Loan Agreement, dated February 27, 2007.  *Id.* ¶ 5.

Section 10.13 of the Loan Agreement provides that the Borrower is obligated to reimburse the Lender for all attorneys' fees and expenses that the Lender incurs in connection with the Borrower's performance and compliance with the Loan Agreement and the other loan documents with the Lender.  *See* Exhibit A at 109-110.  Specifically, Section 10.13 provides:

> (a) Borrower covenants and agrees to pay or, if Borrower fails to pay, to reimburse, Lender upon receipt of notice from Lender for all reasonable costs and expenses (including reasonable attorneys' fees and disbursements) incurred by Lender in connection with (i) the preparation, negotiation, execution and delivery of this Agreement and the other Loan Documents and the consummation of the transactions contemplated hereby and thereby and all the costs of furnishing all opinions by counsel for Borrower (including without limitation any opinions requested by Lender as to any legal matters arising under this Agreement or the other Loan Documents with respect to the Property); (ii) Borrower's ongoing performance of and compliance with Borrower's respective agreements and covenants contained in this Agreement and the other Loan Documents on its part to be performed or complied with after the Closing Date, including, without limitation, confirming compliance with environmental and insurance requirements; (iii) intentionally omitted; (iv) the negotiation, preparation, execution, delivery and administration of any consents, amendments, waivers or other modifications to this Agreement and the other Loan Documents and any other documents or matters requested by Lender; (v) securing Borrower's compliance with any requests made pursuant to the provisions of this Agreement; (vi) the filing and recording fees and expenses, title insurance and reasonable fees and expenses of counsel for providing to Lender all required legal opinions, and other similar expenses incurred in creating and perfecting the Liens in favor of Lender pursuant to this Agreement and the other Loan Documents; (vii) enforcing or preserving any rights, either in response to third party claims or in prosecuting or defending any action or

proceeding or other litigation, in each case against, under or affecting Borrower, this Agreement, the other Loan Documents, the Property, or any other security given for the Loan; and (viii) <u>enforcing any obligations of or collecting any payments due from Borrower under this Agreement, the other Loan Documents or with respect to the Property or in connection with any refinancing or restructuring of the credit arrangements provided under this Agreement</u> in the nature of a "workout" or of any insolvency or bankruptcy proceedings; provided, however, that Borrower shall not be liable for the payment of any such costs and expenses to the extent the same arise by reason of the gross negligence, illegal acts, fraud or willful misconduct of Lender. Any cost and expenses due and payable to Lender may be paid, at Lender's option, from any amounts in the Lockbox Accounts.

*See id.* (emphasis added).  The Initial Lender assigned all rights in the Loan to CSMC 2007-C1 South Rosemary, LLC ("CSMC 2007 C-1"), and the Loan was made part of a securitized pool of loans.  Opinion ¶ 6.  CityPlace and CSMC 2007 C-1 entered into a Loan Modification Agreement dated December 11, 2011.  *Id.* ¶ 7.  The Loan Modification Agreement sets forth the procedure to determine the Net Refinancing Proceeds that CityPlace would pay the Lender (*i.e.*, the Trustee) upon any refinancing or repayment of the Loan.  *Id.* ¶ 8.

## I.     The Trustee's Counterclaims

The Trustee's counterclaims arose from CityPlace's refusal to comply with its obligations under Section 4.9(g) of the Loan Modification Agreement to cooperate with the Trustee to determine the Net Refinancing Proceeds that CityPlace was required to pay upon the December 2018 maturity of the Loan.  Opinion at 4-5; ECF No. 50 ¶¶ 69; 76–81.  Specifically, the Trustee claimed that: (1) "even if the Trustee breached its appointment and notice obligations under the Loan Modification Agreement, CityPlace's claim for a declaratory judgment is barred under the doctrine of substantial forfeiture" (Opinion at 33); (2) "CityPlace breached its duty to cooperate" under Section 4.9(g) of the Loan Modification Agreement (*id.* at 36);[2] (3) "CityPlace's appraisal is void and may not be used to determine the Property's Appraisal Value" because the appraisal

---

[2]      The Court found that CityPlace had breached its obligations as soon as its refusal to cooperate in respect to Ms. Kohut's October 5, 2018 letter.  *See* Opinion at 36; *see id.* ¶ 61.

fails to comply with the specific requirements set forth in Section 4.9(g)(v) for an MAI Appraisal; (*id.* at 38); and (4) the appraisal is void for the additional reason that "CityPlace breached its duty of good faith and fair dealing when it withheld the existence of the zoning application and its dealings with the City of West Palm Beach from Mr. Walsh." *Id.* at 41.  Based on its counterclaim, the Trustee sought the following declaratory judgment.

> the Trustee has complied in all respects with its obligations under the Loan Agreement, the Loan Modification Agreement and the Loan Reinstatement Agreement; (ii) CityPlace must direct Cushman & Wakefield, CityPlace's Qualified Appraiser, to prepare a new appraisal based on all information that was available to CityPlace in September 2018 with respect to a zoning change for the use of the portion of the property that Macy's had occupied; (iii) CityPlace is obligated to cooperate and to participate in the appointment of a third party Qualified Appraiser in accordance with the terms of Section 4.9(g); (iv) upon the completion of the third party's Qualified Appraiser's Appraisal, the parties are obligated to determine the Appraised Value in accordance with the formula set forth in Section 4.9(g) of the Loan Modification Agreement; (v) upon determination of the Appraised Value, the parties are obligated to cooperate and to determine the Net Refinancing Proceeds in accordance with the formula set forth in Section 4.9(f) of the Loan Modification Agreement; and (vi) upon determination of the Net Refinancing Proceeds, CityPlace is obligated to pay the Trustee the remaining balance of the Net Refinancing Proceeds that it did not pay to the Trustee when the refinancing occurred and the loan was partially paid on December 21, 2018.

ECF No. 50 ¶ 81.

On the issue of substantial forfeiture, the Court held that "CityPlace's claim is barred under this doctrine."  Opinion at 33.  The Court found that "CityPlace suffered no prejudice" and found that "[o]n the other hand, the noteholders stand to lose millions of dollars over a technical, inconsequential delay." *Id.* at 35.  With regard to CityPlace's failure to cooperate, the Court held that "CityPlace's refusal to cooperate and provide the Trustee and Mr. Lieberman with information constituted a breach of the obligations under Section 4.9(g)(ii) and frustrated the Trustee's ability to deliver a timely appraisal." *Id.* at 37.  Furthermore, the Court found that CityPlace's appraisal, which CityPlace sent to the Trustee on October 12, 2018, was void for two separate reasons.  First, the Court held that, "[b]ecause Mr. Walsh's appraisal did not consider the zoning modification

sought by CityPlace, the appraisal fails to comply with USPAP and FIRREA and is therefore

invalid under Section 4.9(g) of the Loan Modification Agreement." *Id.* a 41.  Next, the Court held

that CityPlace's appraisal was void because "CityPlace breached its duty to act in good faith under

the Loan Modification Agreement." *Id.*

## ARGUMENT

### I.   THE TRUSTEE IS ENTITLED TO RECOVER ITS ATTORNEYS' FEES AND COSTS PURSUANT TO THE LOAN AGREEMENT

#### A.  The Trustee is Entitled to Recover its Reasonable Attorneys' Fees and Costs

The Trustee is entitled to an award of attorneys' fees and costs pursuant to Section 10.13

of the Loan Agreement.  Contractual fee-shifting provisions are enforceable under New York law

so long as the fees sought are reasonable.[3]  *See Yellow Book of New York, L.P. v. Cataldo*, 81

A.D.3d 638, 640, 917 N.Y.S.2d 215, 217 (2011) (enforcing contractual fee-shifting provision);

*Vigo v. 501 Second St. Holding Corp.*, 121 A.D.3d 778, 779, 994 N.Y.S.2d 354, 356 (2014) ("An

award of an attorney's fee pursuant to a contractual provision may only be enforced to the extent

that the amount is reasonable and warranted for the services actually rendered."); *NetJets Aviation,

Inc. v. LHC Communications, LLC*, 537 F.3d 168, 175 (2d Cir. 2008) ("Under New York law, a

contract that provides for an award of reasonable attorneys' fees to the prevailing party in an action

to enforce the contract is enforceable if the contractual language is sufficiently clear.").

Here, the Trustee is entitled to attorneys' fees and costs pursuant to Section 10.13(a)(ii)

and (viii) of the Loan Agreement.  Pursuant to Section 10.13(a) of the Loan Agreement, the Trustee

is entitled to "all reasonable costs and expenses (including reasonable attorneys' fees and

disbursements) incurred by Lender in connection with" the following:

> (ii) "Borrower's ongoing performance of and compliance with Borrower's respective agreements and covenants contained in this Agreement and the other

---

[3]     The Loan Agreement is governed by New York law. *See* Opinion ¶ 3.

Loan Documents on its part to be performed or complied with after the Closing Date."

(viii) "enforcing any obligations of or collecting any payments due from Borrower under this Agreement, the other Loan Documents, or with respect to the Property."

Exhibit A at 109-10.

The Trustee's counterclaims arose from the CityPlace's failure to comply with two separate covenants and obligations under the Loan Modification Agreement as well as CityPlace's refusal to comply with the Trustee's requests for information under the Loan Modification Agreement. First, CityPlace failed to comply with its obligations to cooperate with the Trustee and to designate a third party Qualified Appraiser under Section 4.9(g) of the Loan Modification Agreement. Opinion ¶ 122. Second, CityPlace failed to comply with its implied covenant of good faith under the Loan Modification Agreement such that CityPlace's appraisal was void. *Id.* at 44-45. Finally, CityPlace failed to comply with requests for information necessary to complete the appraisal process set forth in Section 4.9(g) of the Loan Modification Agreement. *Id.* ¶¶ 57; 76-78.

### B.    CityPlace's Failure to Perform

The Trustee sought relief because "CityPlace has refused to cooperate and participate with the completion of the determination of the Appraised Value under Section 4.9(g) and the determination of the Net Refinancing Proceeds under Section 4.9(f) of the Loan Modification Agreement." ECF No. 50 ¶ 79. This Court concurred. See Opinion at 36. The Court found that CityPlace had refused to cooperate in response to Ms. Kohut's October 5 letter. *Id.* Further, the Court found that CityPlace had disregarded the requests from Mr. Lieberman, finding that "CityPlace did not cooperate in providing Berkadia with the information Mr. Lieberman would need in order to complete his appraisal." *Id.* ¶¶ 81; *id.* at 36. The Court found that "Neither Mr. Rathlev, nor anyone at CityPlace, ever responded to Mr. Lieberman's requests for information," and noted that "Mr. Rathlev testified that CityPlace 'ignored' Mr. Lieberman's requests for

information." *Id.* ¶ 77.  The Court also found that "CityPlace delayed Mr. Lieberman's completion of an appraisal." *Id.*  This Court held that "CityPlace's refusal to cooperate and provide the Trustee and Mr. Lieberman with information constituted a breach of the obligations under Section 4.9(g)(ii) and frustrated the Trustee's ability to deliver a timely appraisal." *See* ECF No. 225 at 36-37.

The Trustee also sought relief because CityPlace violated its duty of good faith under the Loan Modification Agreement by concealing from Cushman & Wakefield pertinent information regarding CityPlace's application for a zoning change pending before the City of West Palm Beach.  ECF No. 50 ¶ 69.  That conduct occurred between September 12, 2018 and October 12, 2018 (when CityPlace sent the invalid appraisal to Berkadia).  Opinion ¶¶ 85-91, 100-105.  The Court held that "New York law has long recognized that implicit in all contracts is a covenant of good faith and fair dealing in the course of contract performance." Opinion at 41-42 (citing *Dalton v. Educational Testing Services*, 87 N.Y.2d 384, 389 (1995)).  The Court further held that "it would be inappropriate for a property owner to conceal information from an appraiser who is trying to determine the market value for purpose of a FIRREA compliant appraisal." *Id.* ¶ 144.  The Court found that CityPlace did not advise Mr. Walsh that CityPlace had filed an application for a zoning change for the Property and did not advise Mr. Walsh of the extensive negotiations CityPlace had been having with The City of West Palm Beach Planning Department. *Id.* ¶ 100.  Although CityPlace representatives testified that they believed in good faith that Mr. Walsh did not need this information to complete his appraisal, the Court did not credit that testimony. *Id.* at 7 n.7.  The Court held that "CityPlace breached its duty of good faith and fair dealing when it withheld the existence of the zoning application and its dealings with the City of West Palm Beach from Mr. Walsh." *Id.* at 41; *see id*. ¶¶ 101-03.  The Court also noted that "[t]his breach was compounded

by CityPlace's disclosure of the application to Alliance Bernstein, as well as prospective retail tenants whom CityPlace was soliciting for business." *Id*. at 41; *see id*. ¶¶ 102-09.  The Court concluded that CityPlace's breach of its duty of good faith and fair dealing rendered its appraisal void and entered a declaratory judgment to that effect in the Trustee's favor. *Id*.  Finally, the Court held that CityPlace breached its duty of good faith through its conduct in connection with the appraisal process. *Id*. at 44; *see id*. ¶ 85-98.

The Trustee also sought relief because CityPlace failed to comply with the Trustee's requests for information made pursuant to the Loan Modification Agreement.  Under Section 4.9(g)(ii) of the Loan Modification Agreement, "[a]ll requests for information related to any MAI Appraisal being obtained shall be submitted in writing to Borrower, and Borrower shall use reasonable efforts to respond with the requested information within five (5) Business Days following receipt of such request."  Opinion ¶ 25.  The Trustee contended that CityPlace refused to reasonably respond to the Trustee's requests for information under Section 4.9(g)(ii).  ECF No. 50 ¶¶ 58-59.  The Court found that the Trustee's representatives, including the Trustee's appraiser, requested information from CityPlace and that CityPlace ignored those requests: (i) on October 5, 2018, Geraldine Kohut, a representative of the Trustee, sent CityPlace a letter requesting information related to the refinance (Opinion at 36; *see id*. ¶ 57); and (ii) on November 6, 2018 the Trustee's appraiser, Stuart Lieberman, emailed CityPlace requesting an update on the information he needed from CityPlace to complete his appraisal (*id*. at 36; *see id*. ¶ 76).  The Court found that CityPlace "ignored" both Ms. Kohut's and Mr. Lieberman's requests for information related to the refinance. *Id.* ¶ 77.  The Court further found that CityPlace's refusal to respond to Mr. Lieberman's requests for information delayed Mr. Lieberman's completion of his appraisal. *Id.* ¶ 78.

"'In general, only a prevailing party is entitled to recover an attorney's fee' and '[t]o be considered a prevailing party, a party must be successful with respect to the central relief sought'" *Village of Hempstead v. Taliercio*, 8 A.D.3d 476, 778 N.Y.S.2d 519, 519 (2004).   Hence, the Trustee prevailed on each of its contentions regarding CityPlace's failure to perform, and the Court granted the Trustee relief that the Trustee requested.   Therefore, the Trustee is entitled to an award of attorneys' fees.   This Court dismissed with prejudice all of CityPlace's claims for declaratory relief and entered a declaratory judgment in the Trustee's favor on the Trustee's counterclaims. *See* ECF No. 229.   The Trustee is therefore the prevailing party and is entitled to an award of attorneys' fees and costs under Section 10.13 of the Loan Agreement.

### B.  Defendant is Entitled to an Award of $4,653,168.25 in Fees

Courts have discretion to determine an appropriate fee award.   *See Flemming v. Barnwell Nursing Home & Health Facilities, Inc.*, 56 A.D.3d 162, 165, 865 N.Y.S.2d 706, 708 (2008), *aff'd*, 15 N.Y.3d 375, 938 N.E.2d 937 (2010) ("While the 'determination as to the proper amount of an award of [counsel] fees lies largely within the discretion of the court, the discretion is not unlimited'").   New York courts generally apply one of two methods to determine a proper fee award: the lodestar method or the percentage method.   *Id.* ("Although no single method of determining fees is mandated, two acceptable options are the percentage approach and the lodestar method, the latter having originated in class action litigation." (internal citation omitted)).   The lodestar method is the most commonly used formula.   *Cf. Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010) ("[T]he 'lodestar' figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence.").[4]

---

[4]      Given the ubiquity of the lodestar formula among jurisdictions, New York courts frequently rely on federal case law applying the lodestar formula.   *See e.g.*, *Rahmey v. Blum*, 95 A.D.2d 294, 303, 466 N.Y.S.2d 350, 358 (1983) (relying on federal case law in applying the lodestar formula).   Similarly, federal courts rely on federal case law applying the lodestar formula

Under the lodestar formula, "the court determines the reasonable hourly rate and multiplies it by the reasonable number of hours expended, then adjusts the fee based upon certain subjective criteria." *Flemming*, 865 N.Y.S.2d at 708; *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) ("The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."); *Tobinick v. Novella*, No. 14-80781-CV, 2018 WL 6978637, at *2 (S.D. Fla. Nov. 20, 2018) (Reinhart, J.), *report and recommendation adopted*, No. 9:14-CV-80781, 2018 WL 6978629 (S.D. Fla. Dec. 6, 2018) (applying lodestar method to determine a reasonable fee award pursuant to a contractual fee-shifting agreement).

Here, the Trustee has attached to this Motion a spreadsheet that sets forth the number of hours reasonably expended by each attorney, paralegal, research librarian and law clerk in litigating this matter along with each timekeeper's hourly rate.[5]  *See* Exhibit B.  Additionally, the Trustee has attached the Trustee's counsels' invoices, which document the specific tasks performed by each timekeeper.  *See* Exhibit C.  As stated in the accompanying Declaration of Thomas J. Miraglia (the "Miraglia Declaration), loan proceeds to be remitted to the Trust have

---

where a fee-shifting provision is governed by the laws of a state that uses the lodestar formula. *See Tobinick v. Novella*, No. 14-80781-CV, 2018 WL 6978637, at *2 (S.D. Fla. Nov. 20, 2018) (Reinhart, J.), *report and recommendation adopted*, No. 9:14-CV-80781, 2018 WL 6978629 (S.D. Fla. Dec. 6, 2018) (applying lodestar method to determine a reasonable fee award pursuant to a contractual fee-shifting agreement governed by California law).

[5]      The time spent by paralegals and law clerks is reimbursable to the extent the paralegals and law clerks perform work traditionally performed by an attorney.  *Jean v. Nelson*, 863 F.2d 759, 778 (11th Cir. 1988).

been used to pay each of these invoices in full, without discount or reduction.[6]   Miraglia Declaration ¶ 8.  The timekeepers' professional biographies are attached hereto as Exhibit D.[7]

"The reasonable hourly rate is defined as the 'prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation.'" *Tobinick*, 2018 WL 6978637, at *3 (Reinhart, J.).  The relevant legal market in this case is the Southern District of Florida.  *See Oliva v. NBTY, Inc.*, No. 11-80850-CIV, 2013 WL 12092119, at *9 (S.D. Fla. May 22, 2013), report and recommendation adopted, No. 11-80850-CIV, 2013 WL 12075978 (S.D. Fla. Aug. 21, 2013), aff'd, 583 F. App'x 877 (11th Cir. 2014) (finding that fee applicant's hourly rates were "within the range of prevailing market rates in the Southern District of Florida").[8]  When the prevailing party is represented by private counsel, courts will generally use the attorney's regular hourly billing rate.  *See Mayson v. Pierce*, 806 F.2d 1556, 1563 (11th Cir. 1987) ("The starting point in assessing reasonable fees when the successful litigant is represented by private counsel is his regular hourly billing rate so long as that rate is <u>within the upper and lower limits </u>of rates charged by comparable attorneys in the same community for similar work." (emphasis added)).  Moreover, a district court may use a higher, out-of-district rate if a

---

[6]     Only one bill has yet to be paid.  It is the fees and expenses incurred during June 2020. The prebill for June 2020 was issued only in the last day, and is in the process of being billed to the Trustee for payment.  *See* Declaration of H. Peter Haveles, Jr., dated July 6, 2020, ¶ 11.

[7]     Professional biographies are available for all attorneys and select paralegals and law clerks.

[8]     In an unpublished decision, this Court used the City of West Palm Beach as the pertinent market.  *See Kleiman v. Wright*, No. 18-80176-CV-Bloom/Reinhart (S. D. Fla. Mar. 17, 2020; ECF 429).  The Trustee respectfully submits that the market to be considered is not merely the City of West Palm Beach, but the entire Southern District of Florida.  As discussed in the case law cited in this memorandum, which this Court apparently did not have an opportunity to consider in the *Kleiman* decision, the pertinent market is the entire district, not merely the city in which the court is conducting the proceedings.  This fact is further underscored by circumstances confronting the Trustee, as it had to retain counsel to litigate against premier litigation counsel from the Southern District of Florida.  *See* Miraglia Declaration ¶ 5; this Motion at 13, *infra*.

reasonable, paying client would pay the higher rate.  *See Rubenstein v. Florida Bar*, No. 14-CV-20786, 2015 WL 1470633, at *2 (S.D. Fla. Mar. 31, 2015), report and recommendation adopted, No. 14-CIV-20786, 2015 WL 11216722 (S.D. Fla. Apr. 22, 2015) ("A district court may use an out-of-district hourly rate-or some rate in between the out-of-district rate sought and the rates charged by local attorneys-in calculating the presumptively reasonable fee if it is clear that a reasonable, paying client would have paid those higher rates.").  Here, the Trustee's counsel charged rates that were either at or below the law firms' normal hourly billing rates for attorneys of comparable skills and experience.

During the Parties' Rule 7.3(b) meet and confer, CityPlace's counsel Boies Schiller Flexner LLP ("Boies Schiller") objected to the Trustee's counsel's hourly rates.  Boies Schiller, however, did not provide any information regarding its rates, as is required by Local Rule 7.3(a).  Local Rule 7.3(a) provides: "If a party objects to an hourly rate, its counsel must submit an affidavit giving its firm's hourly rates for the matter and include any contingency, partial contingency, or other arrangements that could change the effective hourly rate."  Boies Schiller's refusal to provide its rates is not surprising; the Trustee's understanding is that Boies Schiller regularly charges rates that exceed, or are at least commensurate, with those charged by the Trustee's counsel.  *Cf. Kleiman*, slip op. at 4-5 (discussing Boies Schiller's rates to a fee application submitted by Boies Schiller client)

Here, City Place chose to retain a premier litigation team from one of the major firms in Miami, one of the five seats in this District.  When examining the hourly rates charged by the attorneys retained by the Trustee, the comparison should be made against lawyers of "reasonably comparable skills, experience, and reputation."  *See Newman v. Housing Authority*, 836 F.2d 1292, 1299 (11th Cir. 1988); this Motion at 12, *supra*.  Further, the requirements in Rule 7.3 (a) that

CityPlace proffer the actual billing rates for the attorneys that it retained in this action exists to provide a benchmark or measure for what the appropriate hourly rates for defense of this action are. *See Oliva v. NBTY, Inc.*, No. 11-80850-CIV-DIMITROULEAS/SNOW, 2012 WL 12850142, at *8 (S.D. Fla. Feb. 2, 2012) (as to the procedure to respond to a motion for fees under Rule 7.3(a), "the purpose of the Rule was to place the burden of identifying questionable billings on the losing party, who must bear the expense of the prevailing party's attorney's fees.  The Court should not reward a party who deliberately shirks this burden by shouldering the burden itself."), report and recommendation adopted, No. 11-80850-CIV, 2012 WL 12849958 (S.D. Fla. Apr. 26, 2012). As noted above, the rates charged by Boies Schiller are greater than or equal to the rate charged to the trustee by Pepper Hamilton and McDermott.  Even if those rates may be on the high end of what is charged in this District, the rates are acceptable for the purposes of the award of attorney's fees pursuant to a commercially negotiated contractual provision if those rates are within the upper limits of charge by comparable attorneys in the District. *See* this Motion at 12, *supra*. Consequently, the rates for which the Trustee seeks an award of fees are appropriate rates that satisfied the requirements in this circuit.[9]

The reasonableness of the time spent depends on the unique facts and circumstances of each case and is not subject to a rigid formula.  *See M.H. v. Commissioner of the Georgia Department of Community Health*, 656 F. App'x 458, 463 (11th Cir. 2016) ("That determination, rather than being subject to '"a precise rule or formula",' is context-dependent.").  The prevailing party need show only that the amount of time spent was reasonable, which requires a less-exacting

---

[9]      Because the rates fall within the lower and upper band for comparable attorneys in this District, the Court does not have to consider whether it was appropriate for the Trustee to employ attorneys who work outside of the District. If the Court were to do so, however, given CityPlace's choice of counsel and the rates of CityPlace's Miami counsel, the Court could nevertheless find that the rates charged by Pepper Hamilton and McDermott to defend the Trustee are reasonable.

showing than that the time was necessary to the litigation.  *See Id.*  ("Simply put, '[w]hether hours were reasonably expended on litigation is a different question than whether hours were necessary to the litigation, the latter standard being the more exacting of the two.'").

Here, the amount of time spent by the Trustee's counsel was reasonable and the time spent is documented in detail in the attached invoices.  Indeed, the amount of work and hours were a direct result of Boies Schiller's scorched earth tactics.  In what could have been a straight forward breach of contract case, Boies Schiller engaged in a deliberate war of attrition that both greatly taxed the resources of this Court and caused the fees for both parties to sky rocket.

The Trustee was forced to engage in extensive discovery, motion and trial practice in order to prevail.  During discovery between the parties, the Trustee engaged in extensive document review and made substantial document productions.  In order to review CityPlace's documents and to produce the Trustee's documents, the Trustee's attorneys needed the active assistance of various discovery services personnel who maintained and supported the legal team's e-discovery efforts.  *See* Exhibit B.  Because of CityPlace's conduct, the Trustee also had to participate in seven discovery conferences before Magistrate Judge Reinhart, each of which required extensive meet and confer conferences and comprehensive joint discovery memoranda addressing numerous legal issues.  The parties also took 13 depositions between them and retained experts to opine on the appraisal standards required under Section 4.9(g)(v) of the Loan Modification Agreement.  Both experts submitted reports, sat for depositions and testified at trial.

Additionally, the Trustee had to devote substantial resources to oppose CityPlace's multiple unsuccessful and dubious motions.

CityPlace sent the Trustee two successive Rule 11 demand letters threatening sanctions against Trustee and Trustees counsel, to each of which the Trustee had to respond.  Despite the

clarity of those responses, CityPlace nevertheless filed a Rule 11 motion for sanctions against the Trustee. ECF No. 131. The Trustee prepared a response and was two days away from filing its papers in opposition to CityPlace's Rule 11 motion when the Court summarily denied CityPlace's motion on August 7, 2019, in the decision also denying CityPlace's motion for summary judgment. ECF No. 142.

On May 14, 2019, City Place filed a motion for summary judgment, despite the fact that CityPlace had not yet produced the predominant amount of its documents (including the documents that evidenced CityPlace's misconduct) and had not yet produced any of its employees for deposition or given any depositions. ECF 88. In response, the Trustee filed a motion under Rule 56(d), asking the Court to stay the motion for summary judgment until discovery was completed, and also filed extensive papers in opposition to the motion for summary judgment. The Court granted the Trustee's Rule 56(d) motion, and allowed the Trustee to file a supplemental memorandum of law in opposition to the motion for summary judgment. And after the Rule 56(d) motion was granted, the Court held that the last of its multiple discovery conferences to compel CityPlace to complete its electronic search for documents and to produce tens of thousands of documents, barely a week before the Trustee had to depose CityPlace's employees. As a result of those discovery efforts and as noted above, the Court denied CityPlace's summary judgment motion at the same time that it denied City Place's Rule 11 motion. ECF No. 142.

The Trustee also prepared for and attended two mediations, including a court-mandated mediation on May 22, 2019. Each required submission of mediation statements.

In connection with the trial, the Trustee devoted substantial time to prepare the Joint Pretrial Stipulation and to confer with CityPlace regarding the same. The Trustee also had to engage in extensive *in limine* motion practice. First, the Trustee had to bring a motion *in limine*

to preclude CityPlace's expert from offering testimony beyond the scope of his expert report. Second, the Trustee had to oppose CityPlace's attempt to entirely exclude the Trustee's expert. The Court ruled for the Trustee on both motions.

The parties' trial lasted eight days.  Opinion at 5.  In connection with the trial, both pre-trial and post-trial, the Trustee had to devote substantial time drafting findings of fact and conclusions of law with copious record cites.  This required Trustee's counsel to spend time analyzing the trial testimony and exhibits to accurately capture what occurred at trial in its proposed findings of fact.  The Court largely adopted the Trustee's proposed findings and conclusions. Given the extensive discovery, motion, and trial practice in this case, the time that Trustee's counsel expended on this matter is reasonable.  Thereafter, the Trustee prepared a Judgment, submitted and defended its Bill of Costs over CityPlace's objections and prepared this Motion in the face of CityPlace's objections.

Finally, the appeal process has started, and certain submissions have already been made. Among them in the response to the Court of Appeals' questions about the basis for diversity jurisdiction.

Throughout the case, the Trustee's counsel relied on the help of litigation support staff, paralegals and legal assistants to prepare exhibits and supplemental documentation for filing.  This team of professionals aided the lawyers during document production, deposition preparation, trial preparation, the conduct of trial, post-trial submissions, the Bill of Costs and this Motion.  *See* Exhibit B.

"The product of reasonable hours times a reasonable rate does not end the inquiry.  There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.'" *Hensley*, 461 U.S. at 434. Where, as here,

a party "has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified." *Id.*  Here, the Trustee obtained "excellent results," in the form of a dismissal with prejudice of all of CityPlace's claims for declaratory relief and also a declaratory judgment in the Trustee's favor on the Trustee's counterclaim for declaratory relief.

On this Motion, the Trustee is not seeking reimbursement of any fees or costs incurred by local counsel in a good faith effort to demonstrate the billing judgment and discretion exercised by the Trustee on this Motion.  In accordance with the requirements under the Local Rules, the Trustee retained Woodbury, Santiago & Correoso, P.A. ("Woodbury") to serve as local counsel. Woodbury's attorneys have practiced in South Florida for decades, and they substantially contributed to the Trustee's success in this matter, and Woodbury incurred over $220,000 in fees and more than $2,000 in non-taxable costs.  The time spent by Woodbury's attorneys was reasonable and was not duplicative.  The Trustee therefore has the right to seek reimbursement of Woodbury's fees.  Nevertheless, in order to demonstrate the reasonable nature of the Trustee's position on this Motion, the Trustee does seek reimbursement of Woodbury's fees.[10]

## II.   THE TRUSTEE IS ENTITLED TO RECOVER ITS CONTRACTUALLY REIMBURSABLE NON-TAXABLE COSTS

When parties have contractually agreed to award costs to the prevailing party beyond those taxable under 28 U.S.C. § 1920, such provision should be enforced.  *United Food Mart, Inc. v.*

---

[10]    In connection with the fees attributable to Pepper Hamilton LLP and McDermott Will & Emery LLP, the Trustee is not seeking to recover fees incurred by a summer associate or research librarians who assisted (*e.g.*, A. R. Monaco, C.A. Cicco, M.C. Chicco, J. Berman and J. Hoffman). In addition, the Trustee has excluded the fees incurred in connection with preparation of audit response letters by N.R. Shaikh, J. Lundeen and R. Schreck, and certain time incurred by H.P. Haveles, Jr. on tangential matters.

*Motiva Enterprises, LLC*, No. 04-60539CIV, 2006 WL 3068821, at *2 (S.D. Fla. July 10, 2006). When the language in the contract provides for fees and costs without any express or implied limitations, the parties intended that costs beyond Section 1920 are to be awarded. *See MKT Reps S.A. De C.V. v. Standard Chartered Bank International (Americas) Ltd.*, No. 10–22963–CIV, 2013 WL 1289261, at *3 (S.D. Fla. Mar. 28, 2013) (finding that the parties' contract entitled the prevailing party to an award of "all resulting costs and expenses," entitled prevailing party to recover costs beyond the scope of 28 U.S.C. § 1920); *Pellegrino v. Koeckritz Development Of Boca Raton, LLC*, No. 08-80164-CIV, 2008 WL 6128747, at *4 (S.D. Fla. Nov. 24, 2008) (awarding nontaxable costs because the parties' contract entitled the prevailing party to recover "all costs incurred" without any express or implied limitations).

Section 10.13 of the Loan Agreement extends Trustee's recoverable costs beyond Section 1920 because it allows for "all reasonable costs and expenses" and in no way limits recovery to "court costs," "taxable costs" or any qualifying phrases that signal an intended limitation. Therefore, under the Loan Agreement, the Trustee is entitled to recover non-taxable costs detailed in the attached invoices.

Here, the costs can be broken down into three main categories: litigation costs, expert costs and travel expenses. Because the contract allows for recovery of "all reasonable costs and expenses" these costs are recoverable. *See, e.g., MKT Reps S.A. De C.V.*, 2013 WL 1289261 at *4-7 (awarding defendant costs associated with copying, expert fees, travel expenses, postage, computerized research, phone calls and Federal Express charges because applicable contract entitled defendants to non-taxable costs); *Pellegrino*, 2008 WL 6128747, at *4 (awarding costs because "Defendant, a prevailing litigant, seeks recovery of costs pursuant to a contractual agreement between the parties which provided, without any express or implied limitations, for the

prevailing party in litigation to recover costs."). Given the extensive document discovery and motion practice, the total non-taxable cost includes costs associated with data base research, e-discovery processing and document hosting and costs associated with court filings including postage, messenger services and copying. These costs are reasonable given the length and complexity of the litigation. The experts' fees are included in the total non-taxable costs calculation. As stated above, the Trustee's expert submitted a report, sat for a deposition and testified at trial. The expert's invoices, attached as part of Exhibit C, detail the work the Trustee's expert did in quarter of an hour increments allowing the Court to discern what the expert's time was spent on. Finally, the non-taxable costs calculation includes the costs of traveling to and staying in West Palm Beach.[11]

### **RELIEF REQUESTED**

For the reasons stated above, the Trustee respectfully moves this Honorable Court for entry of an order and judgment awarding the Trustee $4,653,168.25 in reasonable attorneys' fees and $305,575.79 in non-taxable costs against CityPlace.

Dated  July 6, 2020

/s/ H. Peter Haveles, Jr.
H. Peter Haveles, Jr.
MCDERMOTT WILL & EMERY LLP
340 Madison Avenue
New York, New York 10173
Telephone:  (212) 547-5400
phaveles@mwe.com

---

[11]CityPlace's counsel should not be surprised to see costs related to travel considering that, even though they are from Miami-Dade County, they  choose to stay in a hotel in West Palm Beach for the duration of both segments of the trial.

Michael P. Woodbury, Esq. [Bar ID # 983690]
Woodbury, Santiago & Correoso, P.A.
9100 S. Dadeland Blvd., Suite 1702
Miami, Florida 33156
Telephone: (305) 670-9580
mwoodbury@woodbury-santiago.com

Angelo A. Stio, III
PEPPER HAMILTON LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018-1405
Telephone: (212) 808-2700
stioa@pepperlaw.com

## LOCAL RULE 7.3 REQUIREMENTS

### VERIFICATION

Under penalties of perjury, I declare that I have read Defendant's Motion for Attorneys' Fees and Costs and the incorporated memorandum of law, and the facts alleged therein are true and correct to the best of my knowledge and belief.

/s/ H. Peter Haveles, Jr.
H. Peter Haveles, Jr.

### CERTIFICATION

I certify that the Trustee has made a good faith effort to resolve by agreement the request for attorney's fees and expenses made in this Motion in accordance with Rule 7.3(b) of the Local Rules of this Court, but that no agreement was reached.

/s/ H. Peter Haveles, Jr.
H. Peter Haveles, Jr.

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on July 6, 2020, a true and correct copy of foregoing Trustee's

Verified Motion for Attorneys' Fees, Declaration of H. Peter Haveles, Jr. and Declaration of

Thomas J. Miraglia dated July 6, 2020 were filed with the Clerk of Court via the Court's CM/ECF

system for electronic service on all counsel of record.

Respectfully submitted,

/s/ Michael P. Woodbury
Michael P. Woodbury, Esq.
[Bar ID # 983690]
WOODBURY, SANTIAGO & CORREOSO, P.A.
9100   S.   Dadeland   Blvd.,   Suite   1702
Miami, Florida 33156
(305) 670-9580
mwoodbury@woodbury-santiago.com