UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-CV-81689-Rosenberg/Reinhart

CITYPLACE RETAIL, L.L.C.,
*A Foreign Limited Liability Company*,

                    Plaintiffs,

v.

WELLS FARGO BANK, N.A.,
*as Trustee for the Registered Holders*
*of Credit Suisse Frist Boston*
*Mortgage Securities Corp., Commercial*
*Mortgage Pass-Through Certificates,*
*Series 2007-C1*,

                    Defendant.

_____/

## <u>ORDER GRANTING IN PART AND DENYING IN PART</u><br><u>TRUSTEE'S MOTION FOR ATTORNEYS' FEES (DE 241)</u>

## I.       RELEVANT PROCEDURAL BACKGROUND

This action stems from a dispute under a mortgage loan agreement between a lender, defendant Wells Fargo Bank, N.A., as Trustee for the Registered Holders of Credit Suisse First Boston Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates, Series 2007-C1 (the "Trustee"), and a borrower, plaintiff CityPlace Retail, LLC ("CityPlace"). After almost nineteen months of prolonged litigation, the case ultimately culminated in an eight-day non-jury trial, after which the Court entered Final Judgment in favor of the Trustee and against CityPlace. ECF Nos. 229 and 225. In entering Final Judgment for the Trustee, the Court also dismissed all of CityPlace's remaining claims and granted a declaratory judgment enforcing the terms of the loan agreement. ECF No. 229. Pursuant to that very loan agreement, the Trustee has filed a motion to recover fees and expenses incurred over the nineteen months it took to enforce the loan agreement.

ECF No. 241. The District Court referred the Trustee's Motion for Attorneys' Fees to me for appropriate disposition. ECF No. 242.[1] Plaintiffs request a total of $4,958,744.04, comprising $4,653,128.25 for attorneys' fees and $305,575.79 for expenses. ECF No. 241 at 20.

I have reviewed all relevant pleadings from both parties. I handled multiple discovery disputes that arose during the litigation. I am otherwise fully advised in this matter. Trustee's Motion for Attorneys' Fees is GRANTED IN PART and DENIED IN PART for the reasons outlined in this Order.

## II.    APPLICABLE LAW

### 1.    The Trustee is Owed Reasonable Attorneys' Fees Pursuant to Section 10.13 of the Loan Agreement

There are statutory and contractual exceptions to the common practice in American litigation that each party in a lawsuit bears its own attorney's fees. *Brown Jordan International, Inc., et al. vs. Carmicle*, No. 14-60629-CV, 2017 WL 5633312, at \*1 (S.D. Fla. Aug. 7, 2017), *report and recommendation adopted*, No. 14-60629-CV, 2017 WL 5632811 (S.D. Fla. Aug. 22, 2017) (citing *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 602 (2001)); *see also Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247 (1975)).

Here, the parties entered into a legitimate and enforceable contract—the "Loan Agreement". ECF No. 241-1. Section 10.13(a) of the Loan Agreement. states that Borrower agrees to pay or reimburse Lender for "all *reasonable* costs and expenses (including *reasonable* attorneys'

---

[1] Under 28 U.S.C. § 636(b)(1)(A) and Rule 72(a) of the Rules of Civil Procedure, I have the authority to enter a final order on the Motion for Attorneys' Fees and Costs because it is not case-dispositive. *See, e.g., Collar v. Abalux, Inc.*, No. 16-20872-CIV, 2018 WL 3328682, at \*13-14 (S.D. Fla. July 5, 2018) (J. Goodman) ("magistrate judges have jurisdiction to enter orders that do not strike claims, completely preclude defenses, or generate litigation-ending consequences").

fees and disbursements) incurred by lender in connection with" litigation related to the Loan Agreement. *Id.* at 109–110 (emphasis added). CityPlace does not contest the Trustee's entitlement to fees and costs associated with this case. ECF No. 243. What CityPlace does contest, however, is the amount the Trustee is owed. *Id.* Thus, what is considered "reasonable" is the question before this Court.

## 2. Calculation of Attorneys' Fees: the Lodestar Method

In calculating attorney fee awards, courts use the lodestar method, whereby a reasonable fee award is "properly calculated by multiplying the number of hours reasonably expended times a reasonable hourly rate." *ACLU of Ga. v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999) (citing *Blum v. Stenson*, 465 U.S. 886, 888 (1994)). This "lodestar" may then be adjusted for the results obtained. See *Barnes*, 168 F.3d at 427 (citing *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994)).[2]

The reasonable hourly rate is defined as the "prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Barnes*, 168 F.3d at 436 (quoting *Norman v. Housing Auth. of Montgomery*, 836 F.2d

---

[2] In computing the lodestar amount, courts should consider: (1) the time and labor required, the novelty, complexity, and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee, or rate of fee, customarily charged in the locality for legal services of a comparable or similar nature; (4) the significance of, or amount involved in, the subject matter of the representation, the responsibility involved in the representation, and the results obtained; (5) the time limitations imposed by the client or by the circumstances and, as between attorney and client, any additional or special time demands or requests of the attorney by the client; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, diligence, and ability of the lawyer or lawyers performing the service and the skill, expertise, or efficiency of effort reflected in the actual providing of such services; and (8) whether the fee is fixed or contingent. *Wachovia Bank v. Tien,* No. 04-20834, 2015 WL 10911506, at *1 (S.D. Fla. Apr. 7, 2015) (J. Valle) (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974) (listing nearly identical factors to consider in determining a reasonable attorney's fee)).

1292, 1299 (11th Cir. 1999)). "Generally, the 'relevant market' for purposes of determining the reasonable hourly rate for an attorney's services is 'the place where the case is filed . . .'" *Procaps S.A. v. Patheon Inc.*, Case No. 12-24356-CIV, 2013 WL 6238647, at *12 (S.D. Fla. Dec. 3, 2013) (J. Goodman) (quoting *Barnes*, 168 F.3d at 427). The fee applicant bears the burden of establishing the claimed market rate. See *Barnes*, 168 F.3d at 427. If the fees requested are not representative of reasonable hourly rates in the place the case is filed, the Court has leave to reduce the fees to reflect the local market. *Five for Entm't, S.A. v. Ayala Rodriguez*, 2017 WL 511085, at *6 (S.D. Fla. Feb. 2, 2017) (J. Turnoff) (where requested hourly rates were appropriate for New York City and Washington, D.C., court concluded that "the rates required some adjustment for the South Florida legal market" and reduced the senior partner's rate from $785 to $710, and the senior associate's rate from $560 to $433).

The Court must consider "what a reasonable, paying client would be willing to pay," bearing in mind "all of the case-specific variables that . . . courts have identified as relevant to the reasonableness of attorney's fees," including the *Johnson* factors. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 184, 190 (2d Cir. 2008) (court must "step[] into the shoes of the reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively") (emphasis in original). In addition, the Court may consider prior hourly rates awarded to other attorneys of similar experience in the community and also the Court's own knowledge of the rates charged by local practitioners. *See McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 450 F.3d 91, 96-97 (2d Cir. 2006) ("A district court may also use its knowledge of the relevant market when determining the reasonable hourly rate."). *See also Norman*, 836 F.2d at 1303 ("[t]he court . . . is itself an expert on the question [of

fees] and may consider its own knowledge and experience concerning reasonable and proper fees . . .").

As to the type of evidence that the fee claimant should produce in support of a fee claim, in *Barnes*, the Eleventh Circuit stated,

> The fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates. That burden includes supplying the court with specific and detailed evidence from which the court can determine the reasonable hourly rate. Further, [ ] counsel should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity.

168 F.3d at 427 (citations and quotations omitted).

In submitting a request for attorney's fees, fee applicants are required to exercise "billing judgment." *Id.* at 428 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). If fee applicants do not exercise billing judgment by excluding "excessive, redundant, or otherwise unnecessary" hours, which are hours "that would be unreasonable to bill to a client and therefore to one's adversary *irrespective of the skill, reputation or experience of counsel*," the court must exercise billing judgment for them. See *Barnes*, 168 F.3d at 428 (quoting *Norman*, 836 F.2d at 1301 (emphasis in original)).

## III.    APPLICATION OF LODESTAR METHOD TO THE CASE AT HAND

### 1. <u>Requested Hourly Rates</u>

The Trustee seeks reimbursement for the time of thirty-seven timekeepers. A review of the biographies accompanying the Motion for Attorneys' Fees provide the following information to assist the Court in assessing the reasonableness of the rates charged:

Mr. Haveles is a senior partner in the New York office of McDermott Will & Emery.[3] With forty years of experience, he is an accomplished litigator in the financial services industry with several accolades for his work in both litigation and legal writing. ECF No. 241-4 at 2. He seeks an hourly rate of $1100 in 2018, $1150 in 2019, and $1195 in 2020. ECF No. 241-2.

Mr. Stio is a junior partner at Pepper Hamilton with over twenty years of experience in commercial litigation. ECF No. 241-4 at 9. He is also the vice chair of Pepper Hamilton's Trial and Dispute Resolution Practice Group. *Id.* Mr. Stio seeks an hourly rate of $635 in 2018, $660 in 2019, and $760/$685 in 2020. ECF No. 241-2. Mr. Readlinger is also a junior partner at Pepper Hamilton with over twenty years of legal experience in complex business matters. ECF No. 241-4 at 6. Mr. Readlinger seeks an hourly rate of $660. ECF No. 241-2.

Mr. Healy, Ms. Sherman, and Ms. Martin are senior associates at Pepper Hamilton. Each have at least ten years of experience practicing in the Trial and Dispute Resolution practice group, and Ms. Martin also practicing in the Discovery Services group. ECF No. 241-4 at 19, 28, 47. Mr. Healy seeks an hourly rate of $495 in 2019 and $560 in 2020. ECF No. 241-2. Ms. Sherman seeks an hourly rate of $495 in 2018 and $515 in 2019. *Id.* Ms. Martin seeks an hourly rate of $435. *Id.*

Ms. English-Mezzino, Mr. Moreira, and Ms. Puccio are mid-level associates in the Trial and Dispute Resolution practice group at Pepper Hamilton. Each of them brought to this case at least five years of legal experience with a focus on complex commercial litigation. ECF No. 241-4 at 15, 23, and 25. Ms. Mezzino seeks an hourly rate of $445 in 2018, $475 in 2019, and $525 in 2020. ECF No. 241-2. Mr. Moreira seeks an hourly rate of 435 in 2019 and $485 in 2020. *Id.* Ms. Puccio seeks an hourly rate of $435. *Id.*

---

[3] Prior to joining McDermott Will & Emery in February 2020, Mr. Haveles was a senior partner at Pepper Hamilton, LLP.

Mr. Farina and Ms. Khandhadia are mid-level litigation associates at the Chicago office of McDermott Will & Emery with three to four years of experience each. ECF No. 241-4 at 18 and 22. Mr. Farina seeks an hourly of $675. ECF No. 241-2. Ms. Khandhadia seeks an hourly rate of $745. *Id.*

Mr. Scher is a junior associate at Pepper Hamilton in the Trial and Dispute Resolution practice group. ECF No. 241-4 at 26. He seeks an hourly rate of $445 in 2018 and $355 in 2019. ECF No. 241-2.

The Trustee also requests reimbursement for four "discovery attorneys" who worked on the case.[4] Biographies for these four discovery attorneys paint a picture of varied experience. ECF No. 241-4 at 30, 37, 50, and 51. Ms. Adams and Mr. Rowe request an hourly rate of $235, while Ms. Fritsch and Mr. Slear request an hourly rate of $205. ECF No. 241-2.

In addition to fees for the attorneys who worked on this case, The Trustee requests reimbursement for the hours worked by nine different discovery personnel at varying rates. For the nine discovery services personnel listed, the hourly rates requested range from $180 to $415. *Id*. Of these nine discovery services personnel, biographies were submitted for six of them. ECF No. 241-4 at 33–35, 41, and 43–44.

The remaining rates requested are for hours worked by six paralegals, two document clerks, a librarian, a "project assistant," and an individual providing "research services." ECF No. 241-2. The paralegals have varying degrees of experience according to their biographies (ECF No. 241-4 at 32, 36, 38, 45, 46, and 49 (with the exception of one paralegal whose biography is not

---

[4] ECF No. 241-2 lists discovery attorney S. Adams twice. According to the hour log, the first S. Adams listed worked 9 hours in 2018 at an hourly rate of $235. The second S. Adams worked 19.2 hours in 2018 at the same hourly rate. I will assume these are the same person and that "S. Adams" was unintentionally listed twice.

included), and they request varying hourly rates from $160 to $325. ECF No. 241-2. The document clerks request an hourly rate of $60 for work done in 2018 and $65 for work done in 2020. *Id.* The librarian's requested hourly rate is $130. *Id.* The project assistant's requested hourly rate is $145. *Id.* Finally, the individual providing research services requests an hourly rate of $250. *Id.*

      a. <u>All Attorneys' Rates Shall be Reduced</u>

I first must determine the relevant legal market for assessing the requested rates. The Trustee argues, "The relevant legal market in this case is the Southern District of Florida." ECF No. 241 at 12; *id.* n. 8 ("The Trustee respectfully submits that the market to be considered is not merely the City of West Palm Beach, but the entire Southern District of Florida. . . . [T]he pertinent market is the entire district, not merely the city in which the court is conducting the proceedings.").[5]

---

[5] The Trustee's motion mistakenly states, "In an unpublished decision, this Court used the City of West Palm as the pertinent market. *See Kleiman v. Wright,* No. 18-80176-CV-Bloom/Reinhart (S.D. Fla. Mar. 17, 2020; ECF 429)." ECF No. 241 at 12 n.8. In *Kleiman,* the Court treated the relevant geographic market as all of Palm Beach County, not just the City of West Palm Beach. *Kleiman, et al. v. Wright*, No. 9:18-cv-80176, 2020 WL 198060, at *3 (S.D. Fla. Mar. 17, 2020):

> I am personally familiar with the hourly rates charged by the top civil litigators *in Palm Beach County*. Those rates range between $600 and $700 per hour. By way of example, in 2018, a senior partner from the West Palm Beach office of a national firm of over 1000 lawyers, who was admitted to the Florida Bar in 1987, charged $670 per hour for a highly contentious complex civil litigation in Palm Beach Circuit Court. An associate with 9 years of experience charged $440 per hour in the same case. *See FD Destiny, LLC, et. al. v. AVP Destiny, LLC, et. al.,* No. 502009-CA-029903 (Final Judgment of Attorneys' Fees and Costs, Jan. 5, 2018). I am aware that two former Presidents of the Florida Bar whose offices and law practices are *in Palm Beach County* and who charge between $600 and $625 per hour for complex civil litigation in state and federal court in West Palm Beach. The highest rate billed *in Palm Beach County* is approximately $850 per hour for high stakes "bet the company" litigation. *See Lauth v. International Data Management,* No. 2010 CA 27629 (Order awarding attorney fees, Oct. 13, 2015).

In support of its argument that the relevant legal market is the entire Southern District of Florida, the Trustee cites *Oliva v. NBTY, Inc*., No. 11-80850-CIV, 2013 WL 12092119, at \*9 (S.D. Fla. May 22, 2013), *report and recommendation adopted*, No. 11-80850-CIV, 2013 WL 12075978 (S.D. Fla. Aug. 21, 2013), aff'd, 583 F. App'x 877 (11th Cir. 2014) for the proposition that the "fee applicant's hourly rates were 'within the range of prevailing market rates in the Southern District of Florida.' " The cited case makes a passing reference to the "range of prevailing market rates in the Southern District of Florida" without any further analysis or discussion. Notably, the opinion does not indicate whether the losing party contested the appropriate market. Also, the reported decision indicates that the lawyers seeking fees were from Fort Lauderdale and Kansas City, and the case was litigated in Fort Lauderdale, which is in Broward County.[6]

To the extent the Trustee is arguing that the relevant market for attorney's fees in federal court is always the entire judicial district where the case was litigated, I reject that argument. That conclusion would lead to absurd results. For example, the Southern District of Texas has courthouses spanning from Houston and Galveston in the east to Brownsville and McAllen along the U.S.-Mexico border 350 miles to the south, and Laredo, farther west along the border. Similarly, the Northern District of Texas has a courthouse in Dallas and another one in Amarillo, almost 400 miles away in the Texas Panhandle. It is self-evident that the market rates for legal services in one of the 10 largest cities in the country (Houston, Dallas) will be materially different

---

> *See also Procaps S.A.*, 2013 WL 6238647, at \*13 (court found rates requested were "well above those used in South Florida by attorneys practicing sophisticated commercial litigation").

*Id.* (emphasis added).

[6] The Trustee's Motion asserts that "the case law discussed in this memorandum" supports a finding that the appropriate market is the Southern District of Florida. *Id.* n.8. The sole case law cited on this issue is the *Oliva* case.

from those rates in significantly less populous, less expensive locations (Laredo, McAllen, Brownsville, and Amarillo). There are many other similar examples. To name a few: San Jose and Eureka in the Northern District of California; Philadelphia and Allentown in the Eastern District of Pennsylvania; Chicago and Rockford in the Northern District of Illinois; San Antonio and Midland in the Western District of Texas.

I find that Palm Beach County comprises a distinct legal market. The Southern District of Florida extends approximately 300 miles along the Atlantic coast from Key West to Fort Pierce. There are federal courthouses in Key West, Miami, Fort Lauderdale, West Palm Beach, and Fort Pierce, which are assigned to several administrative divisions. Palm Beach County is part of the Northern Division, which includes five other counties to the north and northwest of Palm Beach County. It is a 70 mile drive from West Palm Beach to Miami, approximately the same distance as driving from Philadelphia to Allentown or from mid-town Manhattan to New Haven, Connecticut. I have personally practiced in Palm Beach County since 1996. I am aware that many lawyers from Miami decline to take cases in Palm Beach County (and vice versa) based on geographic distance and unfamiliarity with the local bench and bar. For all these reasons, I reject the Trustee's argument that the relevant legal market is the entire Southern District of Florida, and more specifically, that I should consider rates charged in Miami.

The Trustee's requested attorneys' rates are unreasonably high in comparison with qualified lawyers in Palm Beach County. Less than a year ago, I addressed the same issue in *Kleiman.* In that case, I found that top civil litigators in Palm Beach County billed at rates between $600 and $700 per hour, with the highest-billing lawyer charging $850 per hour. *Id.* at *3. In addition to requesting rates that are unreasonably high in comparison with similarly qualified lawyers in Palm Beach County, the Trustee fails to justify these rates by showing a lack of

attorneys practicing here who were willing and able to handle this matter. *Barnes*, 168 F.3d at 437 (citing *Cullens v. Georgia Dep't. of Transp.*, 29 F.3d 1489, 1494 (11th Cir. 1994) ("If a fee applicant desires to recover the non-local rates of an attorney who is not from the place in which the case was filed, he must show a lack of attorneys practicing in that place who are willing and able to handle his claims."). Without detracting from the fine lawyering on both sides of this case, at base, this case involved a straight-forward alleged breach of a written agreement. I am personally familiar with multiple Palm Beach County litigators who could have (and would have) handled this case just as well for the rates that I am awarding.

In its Motion, the Trustee attempts to justify its high rates by arguing that the rates it seeks are comparable to those charged by CityPlace's counsel at Boies Schiller and that those rates are acceptable for the purpose of the attorney's fees award since they are within the upper limits of charge by comparable attorneys in this District. ECF No. 241 at 14. I find this argument unpersuasive. First, for the reasons already stated, the entire Southern District of Florida is not the proper measuring stick. The mere fact that Boies Schiller may be charging its client at comparable inflated rates does not make them reasonable for a court to award. In fact, in *Kleiman*, I reduced Boies Schiller's Miami rates because I found they were not reasonable for a litigation in Palm Beach County. *Kleiman,* 2020 WL 198060, at *6 (S.D. Fla. Mar. 17, 2020).

Finally, the Trustee argues that CityPlace failed to abide by Rule 7.3(a), which requires that "[i]f a party objects to an hourly rate, its counsel must submit an affidavit giving its firm's hourly rate for the mater . . . " S.D. Fla. L. R. 7.3(a). *See* ECF No. 241 at 13. The Trustee based this contention on the fact that at the meet and confer, which is required by Rule 7.3(b), CityPlace stated their objection to the Trustee's hourly rates, but failed to provide an affidavit with their own rates. *Id.* I disagree with the Trustee's interpretation of Rule 7.3(a) to mean that the objecting party

must provide their rates at the meet and confer. The entirety of the relevant portion of Rule 7.3

states the following:

> "Within fourteen (14) days after service of the motion, the respondent shall describe
> with reasonable particularity each time entry or nontaxable expense to which it
> objects, both as to issues of entitlement and as to amount, and shall provide
> supporting legal authority. If a party objects to an hourly rate, its counsel must
> submit an affidavit giving its firm's hourly rates for the matter and include any
> contingency, partial contingency, or other arrangements that could change the
> effective hourly rate."

S.D. Fla. L. R. 7.3(a). Read in context, this Court interprets Rule 7.3(a) to mean that the objecting

party may provide its firm's hourly rates when it files its response, complete with the descriptions

of the particular time entries and expenses to which it is objecting. Thus, CityPlace complied with

Rule 7.3(a) when it included with its Response an affidavit from Karen A. Chesley, a partner at

Boies Schiller, who has personal knowledge of the firm's hourly billing rates and compensation

structure for this case. ECF No. 243-1.[7] Taking into account the professional biographies the

Trustee submitted in support of their Motion for Attorneys' Fees (ECF. No. 241-4), the parties'

arguments, and applying my own experience and knowledge, the chart below details what I find

to be reasonable rates for attorneys in the Palm Beach County market for a case of this type:

| Attorney | Reduced Hourly Rate |
|---|---|
| Senior Partner Mr. Haveles | $675 |
| Junior Partners Mr. Stio and Mr. Readlinger | $500 |
| Senior Associates Mr. Healy, Ms. Sherman, and Ms. Martin | $400 |
| Mid-level Associates Ms. English-Mezzino, Mr. Moreira, Ms. Puccio, Mr. Farina, and Ms. Khandhadia | $350 |
| Junior Associate Mr. Scher | $300 |

---

[7]Additionally, the Trustee has not alleged any prejudice stemming from Plaintiffs' non-compliance. "It is not mandatory that the Court deny the Motion for this alleged non-compliance. This is especially true, where . . . the party seeking denial of the Motion has identified no prejudice suffered from the alleged local rules violation." *Kowalski v. Jackson Nat. Life Ins. Co.*, No. 12-60597-CIV, 2014 WL 4101567, at *4 (S.D. Fla. Aug. 20, 2014) (J. Cohn) (court declined to deny motion for attorneys' fees based on non-compliance with Rule 7.3).

| Discovery attorneys Ms. Fritsch, Mr. Slear, Mr. Rowe, and Ms. Adams[8] | $225 |
|---|---|

   b. <u>Paralegals' Rates Shall be Reduced</u>

   The Trustee requests varying hourly rates from $160 to $325 for work done by six paralegals. ECF No. 241-2. Local Rule 7.3 requires motions for attorneys' fees to provide "the identity, experience, and qualifications for each timekeeper for whom fees are sought." S.D. Fla. L.R. 7.3(a)(5)(A). Although the Trustee did comply with Local Rule 7.3's requirement to provide biographies for all six paralegals, only three of those biographies contained information about experience level. Even for those three paralegals whose biographies demonstrate high qualifications, I still find the requested range of rates to be unreasonably high. *See Estrada v. FTS USA, LLC*, No. 14-23388-CIV, 2018 WL 3697491, at *10 (S.D. Fla. July 20, 2018), *report and recommendation adopted*, 2018 WL 4777160 (S.D. Fla. Aug. 9, 2018) (J. McAliley) (noting that paralegal rate of $185 to $215 is "unacceptably high"). Where there is no information regarding experience level and qualifications in the professional biographies provided by the Trustee, I will award the hourly rate of $125, which is a reasonable hourly rate for paralegal services. *Houston v. South Bay Investors*, Case No. 13-CV-80193, 2013 WL 3874026, at *2 (S.D. Fla. July 25, 2013) (J. Hurley) (finding $115 a reasonable hourly rate for paralegal services). For those paralegals whose biographies describe a higher level of experience, I will adjust upward from $125 to $150

---

[8] For discovery attorneys, I find an hourly rate of $225 per hour to be reasonable according to local standards and relevant caselaw. *See TYR Tactical, LLC v. Productive Prod. Enter. LLC, et al.*, No. 15-CIV-61741, 2018 WL 3110799, at *10 (S. D. Fla. April 11, 2018) (J. Valle) (finding $225 to be a reasonable hourly rate for eData associates), *report and recommendation adopted sub nom.* 2018 WL 3109624 (S.D. Fla. Apr. 30, 2018), *amended*, 2018 WL 2672391 (S.D. Fla. June 5, 2018).

per hour. *Toledo v. Vioss Vision, Inc.*, No. 18-20309-CIV, 2019 WL 5689246, at *2 (S.D. Fla. Oct. 31, 2019) (J. Goodman) (finding hourly rate of $150 for an experienced paralegal to be reasonable).

### c. Discovery and Research Services Personnel Rates Shall be Reduced

For personnel performing discovery services and the individual performing research services, I find an hourly rate of $100 to be reasonable according to caselaw. *Fidelity Life Assoc. v. Cohen*, Case No. 15-CV-81552, 2017 WL 11220364, at *3–4 (S.D. Fla. Oct. 11, 2017) (awarding fees for work performed by an "e-discovery coordinator" and "research librarian") (J. Brannon); *see also MKT Reps S.S. De C.V. v. Standard Chartered Bank Int. (Americas) Ltd.*, No. 10–22963–CIV, 2013 WL 1289261, at *9 (S.D. Fla. Mar. 28, 2013) (J. O'Sullivan) (awarding $100 per hour for litigation support analyst); *McNider Marine LLC v. Cain & Daniels, Inc.*, Case No. 8:17-cv-2561-T-24, 2019 WL 1902897, at *2–3 (M.D. Fla. April 29, 2019) (rejecting an hourly rate of $150.00 for an "electronics litigation support" specialist, and instead awarding a $100.00 per hour rate); *Rabco Corp. v. Steele Plaza, LLC*, Case No. 6:16-cv-1858-Orl-40, 2019 WL 5188601, at *9 (M.D. Fla. July 29, 2019). Thus, in keeping with relevant caselaw, I will reduce the hourly rate for discovery personnel and research personnel to $100.00.

### d. Remaining Support Staff Rates Shall be Reduced

Regarding the remaining personnel, I decline to assign an appropriate rate to work done by the librarian and document clerk because, for reasons outlined below, I find their time to be non-compensable. The project assistant's work, however, will be compensated. The work log shows that the project assistant's primary role in this case was to prepare the privilege log. See ECF No. 241-3 at 55–58, 72–79. I find a reasonable hourly rate to be $50 as opposed to the $145 requested. ECF No. 241-2.

Taking into account the professional biographies the Trustee submitted in support of their Motion for Attorneys' Fees (ECF. No. 241-4), the parties' arguments, and applying my own expertise, the chart below details what I find to be reasonable rates in the West Palm Beach market for a case of this type:

| Paralegal/Support Staff | Reduced Hourly Rate |
|---|---|
| Senior Paralegals Ms. Bala, Ms. Mahecha, and Ms. Monestime, | $150 |
| Junior Paralegals Ms. Reeder, Ms. Fleming, and Ms. Tencza | $125 |
| Discovery services personnel Farma, Alexander, Cawley, Keller, Navarro, Pettiford, Heitz, Catanzariti, and Kwon | $100 |
| Research services personnel Hoffman | $100 |
| Project Assistant Roth | $50 |

## 2. Reasonable Hours: All Attorneys' Hours Shall be Reduced by 20%

The Trustee submitted 315 pages of billing records spanning the relevant nineteen-month time frame (October 12, 2018 to June 30, 2020). ECF No. 241-3. During this time period, there were thirty-seven timekeepers who billed a total of 8,072.85 hours. ECF No. 241-2. 1,627.3 of those hours were for work performed by Senior Partner, Mr. Haveles (accounting for roughly 20% of the total work done on this case). *Id.* With over 240 entries on the docket, there can be no doubt that during those nineteen months, this case was heavily litigated. Both parties conducted a great deal of document review, participated in seven discovery conferences before me, conducted 13 depositions, and conferred with their respective experts. ECF No. 241 at 14–15. The Trustee also spent time responding to Plaintiff's Motion for Summary Judgment (ECF No. 88) not only with a Response in opposition to Plaintiff's Motion for Summary Judgement (ECF No. 103), but also with a motion under Rule 56(d) asking the Court to stay Plaintiff's motion until discovery was completed. ECF No. 102. Ultimately, the Court granted Defendant's Motion to stay Plaintiff's Motion for Summary Judgment and once discovery was complete, the Court denied Plaintiff's

Motion for Summary Judgement. ECF No. 142. Both parties also prepared for and attended two mediations, one of which was court ordered. ECF No. 101. All of these efforts, including additional time spent filing motions *in limine* and Joint Pretrial Stipulations, culminated in a non-jury trial spanning eight-days, after which the Court entered Final Judgment in favor of the Defendant, dismissed all of Plaintiff's remaining claims, and granted declaratory judgment enforcing the terms of the Loan Agreement. ECF No. 229.

CityPlace asserts that the Trustee's 8,072.85 hours billed from inception through June 2020 is unreasonable and that the large amount of hours is due to their improper billing practices, namely: (1) excessive block billing, (2) inefficient staffing, (3) excessive redaction of bills, (4) billing for excessive travel time, and (5) Mr. Haveles suspected practice of rounding up the majority of his time entreis to the nearest half-hour or hour. ECF No. 243 at 17. I agree with many of Plaintiff's points and find common themes in the Trustee's billing practices. Notwithstanding the complexity and lengthy life of this case as described above, a detailed review of the Trustee's time entries reveals overstaffing, numerous instances of block billing, excessive time spent on certain tasks, redundant billing, failure to delegate tasks to more junior attorneys, billing for administrative tasks by some attorneys, and a failure to keep time in the appropriate tenth-of-an-hour increments. I will discuss each of these occurrences in turn.

    a.  <u>Block Billing</u>

First, the court notes many instances of block billing, which is the "disfavored practice of including multiple distinct tasks within the same time entry without specifying the amount of time spent on each task." *Bank v. Tien*, No. 04-CV-20834, 2015 WL 10911507, at *4 (S.D. Fla. Sept. 29, 2015) (J. Valle) (citing *Dial HD, Inc. v. ClearOne Commc'ns, Inc.*, 536 Fed. Appx. 927, 931 (11th Cir. 2013)). This practice prevents the Court from assessing the time spent on each discrete

task and thus, the reasonableness of the fees sought. As demonstrated in the representative examples below, block billing occurred across the board. However, by far the most prevalent block billing practices were exhibited by Mr. Haveles, the attorney billing the most hours at the highest hourly rate. By way of example, Mr. Haveles' March 21, 2019 entry contains six distinct tasks lumped together in one entry totaling 9.5 hours:

> "Prepare for hearing; draft argument outline; conferences with Stio regarding preparation for hearing and hearing issues; meeting with Woodbury regarding hearing preparation; meeting with Weil regarding settlement issues; email exchange and phone call with Jensen [rest of entry redacted]."

ECF No. 241–3 at 54. Similarly, on May 23, 2019, Mr. Haveles billed 7.5 hours for six distinct tasks in one time entry that reads:

> "Revise summary judgment opposition memo; email exchange and phone calls with English and Puccio regarding the same; email exchange and phone call with Healy regarding the Rule 56 motion; review Judge Rosenberg's Rule 56 decision; phone calls with Stio regarding summary judgment issues; email memo to Harrison regarding search terms."

*Id.* at 111. Finally, towards the end of the case on January 13, 2020, Mr. Haveles billed fourteen hours in one time entry that again lists six unique tasks:

> "Prepare for trial; meetings with the team regarding trial issues; meetings with Corallo, Alvelo and Kohut regarding witness preparation; attend trial; revise the Fana witness sheet; annotate the Kohut exhibits."

*Id.* at 252.

Mr. Haveles was not the only attorney timekeeper whose entries are block billed; many of his colleagues' time entries show similar practices. As one representative example, on December 14, 2018, Ms. Sherman billed 8.5 hours for six tasks as described in a single time entry:

> Participate in call with P. Havales and A. Stio to prepare for court conference; participate in court conference; review factual timeline; review court orders; draft response to motion for mandatory preliminary injunction; review R. Mezzino research.

*Id.* at 15. On April 5, 2019, Mr. Scher billed 9 hours for the following entry:

> Communicate with J. Farma regarding updating supplemental production; confirm production of specific unredacted documents for K. Puccio; deduplicate privilege log to ensure accuracy of current privilege log; communicate with partners on case regarding making changes to current draft of privilege log; make changes on privilege log based on recent comments; communicate with P. Haveles regarding responding to in-camera review order.

*Id.* at 69. On June 17, 2019, Mr. Healy billed just under 7 hours for the following entry:

> Review documents produced by CityPlace in preparation for Penksa deposition; conduct legal research related to the admissibility of Chiasson's prior engagement letters with Wells Fargo in preparation for motion in limine.

*Id.* at 136. On June 28, 2019, Mr. Healy billed just under 9.5 hours for the following:

> Revise summary judgment opposition brief to add new, relevant evidence; work with K. Puccio, R. English-Mezzin, J. Moreira, and L. Mahecha to prepare amended memorandum, statement of disputed facts, and all necessary exhibits.

*Id.* at 145.

The Trustee argues that in this case, block billing does not justify a reduction of the fee award because the tasks listed in the suspect time entries are closely related and include a thorough description of the activities performed. *See* ECF No. 244 at 8 (*citing Williams v. R.W. Cannon, Inc.*, 657 F. Supp. 2d 1302, 1312 (S.D. Fla. 2009), *Florida International University Board of Trustees v. Florida National University, Inc.*, No. 1:13-cv-21604, 2019 WL 3412159, at *6 (S.D. Fla. June 17, 2019) (J. Becerra) and *Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, No. 09-80918-CIV-MARRA/JOHNSON, 2011 WL 13108095, at *4 (S.D. Fla. Apr. 7, 2011) (J. Marra)). I find this argument unpersuasive. Although the Trustee cites to specific examples where it may be true that the specific activities listed in the block entry are closely related and described in detail, those are just a few cherry-picked examples. There are still numerous examples of entries,

not only by Mr. Haveles but by other attorneys (and paralegals) as well, that include a list of tasks

that are not related to each other in any way other than they were performed by the same attorney.[9]

Although I do not doubt that the Trustee worked in good faith throughout the entirety of

this case, "the Court must be able to verify the need or relatedness of those projects before it can

approve payment for the time incurred." See *TYR Tactical*, 2018 WL 3110799, at *11; citing

*Hermosilla v. Coca-Cola Co.*, No. 10-21418-CIV, 2011 WL 9364952, at *15 (S.D. Fla. July 15,

2011) (J. Torres); *Gundlach v. NAACP, Inc.*, No. 303-CV-1003J32-MCR, 2005 WL 2012738, at

*4 (M.D. Fla. Aug. 16, 2005) (reducing the fee amount by an appropriate percentage due to block

billing). Counsel's practice of block billing, however, makes it impossible for this Court to

ascertain how much time was spent on each task. Accordingly, a fee reduction is appropriate.

b.   <u>Redundant Billing, Excessive Time, and Failure to Delegate</u>

While many of the hours billed by the Trustee are reasonable and compensable, the work

log also contains entries for work that was redundant, excessive, and could have been assigned to

more junior (and less expensive) attorneys.

"When more than one attorney represents a party, a court must deduct from the fee award

any 'redundant hours.'" *Vazquez v. 1052 LLC*, No. 15-22677-Civ, 2016 WL 541432, *3 (S.D. Fla.

Feb. 11, 2016) (J. Cooke). Redundant hours "generally occur where more than one attorney

represents a client." *Norman*, 836 F.2d at 1301-1302. When a fee applicant seeks to recover fees

for the work of multiple attorneys, the fee applicant must show that the attorneys "are not

unreasonably doing the same work, and are being compensated for the distinct contribution of each

lawyer." *Id.* at 1302; *Barnes*, 168 F.3d at 432.

---

[9] Examples of block billing already cited in this Order provide examples of block billing where
the individual tasks are unrelated.

The Trustee's work log illustrates significant redundancy in entries as a result of seventeen different attorneys and six paralegals contributing to various parts of the defense. ECF No. 241-2. One illustrative example of redundant billing is illustrated by the six attorneys (two partners, three associates, and one discovery attorney) who together billed almost 375 hours to attend the eight-day long bench trial. ECF No. 241-3 at 222–255. Not only did the Trustee fail to provide any explanation as to why it was necessary or beneficial to the client to have five attorneys attend the trial and bill for their time; but the attorneys who attended the trial did not provide any detail in their time entries as to what specifically they were doing at trial to justify billing for the time. I find that even for a case of this complexity, this staffing is excessive; it is reasonable to have two partners, one associate, and one discovery attorney attend trial.

Additionally, in the first 150 pages of the work log, there are over 100 entries for hours the various attorneys spent on conference calls, with multiple attorneys billing for a single call. ECF No. 241-3. While it is not unreasonable for a legal team to spend some time discussing the case over conference calls, apart from the billing records themselves, the Trustee has provided little explanation or justification for the duplicative charges. "While there is nothing inherently unreasonable about a client relying on multiple attorneys, the fee applicant must establish that the time spent reflects the distinct contribution of each lawyer to the case and is the customary practice of multiple lawyer litigation." *Katz v. Chevaldina*, 127 F. Supp. 3d 1285, 1304 (S.D. Fla. 2015) (citing *Barnes*, 168 F.3d at 432). The Trustee has not made this showing.

Redundant billing as well as excessive time spent on tasks can also been seen in many of the work done not only by Mr. Haveles, but by multiple associates assisting him with the task as well. By way of example, after the bench trial, Mr. Haveles and multiple other associates logged over 115 hours drafting, amending, revising, and reviewing Defendant's amended proposed

findings of fact and conclusions of law. ECF No. 241-3 at 272–74. I find the amount of time and the number of people assigned to work on this task to be unreasonable. While understandably, the Trustee necessarily had to re-draft facts to reflect the testimony produced at the trial, many of the conclusions of law were almost identical to those submitted in Defendant's initial proposed findings of fact and conclusions of law. *See* ECF Nos. 175 at ¶160–260 and 223 at ¶165–263. *See APL Co. Pte Ltd. V. Pro Transport, Inc.*, No. 05-21494-CIV, 2006 WL 8433160, at *5 (S.D. Fla. Dec. 15, 2006) (J. O'Sullivan) (finding 22 hours spent drafting proposed findings of fact and conclusions of law to be excessive and reducing the time by 50%); *Gottlieb v. Constr. Serv. & Consultants, Inc.*, No. 05-14139-CIV, 2007 WL 9751657, at *4–5 (S. D. Fla. April 2, 2007) (J. Graham) (finding 34 hours billed to draft the proposed findings of fact and conclusions of law was unreasonably excessive and reducing it to 10 hours).

An illustrative example of duplicative billing is found in time entries for Mr. Stio, a partner and one of the lead attorneys on this case. On December 15, 2018, Mr. Stio billed 7.1 hours for "[r]eview[ing] documents for materials regarding appraiser disclosure to Related." ECF No. 241-3 at 16. The following day, Mr. Stio again billed 7.1 hours for "[r]eview[ing] documents for materials related to appraisal disclosures." *Id.* Not only is this an example of duplicative billing, but the Trustee has not shown that this task could not have been handled by an associate instead of a junior partner billing at almost double the hourly rate. Experienced, partner-level lawyers should not be awarded their top rates for performing work that could have been completed by an associate attorney. *Plummer v. Chemical Bank*, 592 F. Supp. 1168, 1172 (S.D.N.Y. 1984). "A Michelangelo should not charge Sistine Chapel rates for painting a farmer's barn." *Ursic v. Bethlehem Mines*, 719 F.2d 670, 677 (3d Cir. 1983) (disapproving of failure to delegate routine tasks to associates or administrative staff). The work log shows that both Mr. Stio and Mr. Haveles

billed for tasks that an associate could have completed. CityPlace points to an illustrative example of Mr. Haveles' failure to delegate, and I tend to agree with their assessment. ECF No. 243-3 at 2. Between December 26th and 30th, 2018, Mr. Haveles billed roughly 8.5 hours (which at his $1100 hourly rate at the time amounts to over $9,000) for tasks such as "review[ing] amended complaint," "draft[ing] answer," "draft[ing] proposed memo," and "draft[ing] and revis[ing] counterclaim." ECF No. 241-3 at 19. The Trustee has not shown why all of these tasks could not have been assigned to and completed by one of the three very capable associates already assigned to work on the case and billing at almost half the hourly rate of Mr. Haveles.

c. Billing for Administrative Tasks by Discovery Attorneys

I find that CityPlace's objections to a number of time entries made by discovery attorneys to be valid. ECF No. 243-3. In my detailed review of the work log, I found many instances of discovery attorneys billing excessive amounts of time for administrative tasks such as reviewing the docket and compiling trial binders. *See e.g.* ECF No.241-3 at 199 (on September 25, 2019, Mr. Slear billed 6 hours for "Review Docket to gather documents to prepare pre-trial binders related to factual assertions and representations of the parties during litigation related to Discovery and a second binder related to all major pleadings" when he had billed 7 hours the day before and 2.5 hours on September 23 for the same task); *id.* at 234 (on November 18, 2019, Mr. Fritsch spent 5 hours "[o]rganiz[ing] and consolidate[ing] trial files"); *id.* at 247–249 (in the span of two days, Mr. Fritsch billed 13.5 hours preparing exhibit binders for trial).

d. Time Entries for Appellate Work

In its Response, CityPlace argues that the Trustee's request for fees associated with the ongoing appeal are premature and should be denied in full. ECF No. 243 at 6, n. 2. A review of the Trustee's work log reveals that the Trustee is seeking reimbursement for roughly 63 hours of

appellate work, the majority of which was billed by Mr. Haveles, Mr. Farina, and Ms. Khandhadia. ECF No. 241-3 at 297–312. I agree with CityPlace and decline to consider whether any hours spent on the appeal are reasonable while the appeal is still pending.

e.   <u>Excessive Redaction</u>

CityPlace also raises a concern that many of the entries are so heavily redacted that this Court cannot accurately determine whether the time is compensable or not. ECF No. 243 at 20. The Trustee's response to this argument points to Mr. Haveles' declaration in which he states that the Trustee limited their redactions to three categories of information: (1) the "preamble paragraph" of each invoice that contains specific client advice written by Mr. Haveles protected by both the privilege and work product doctrines, (2) specific references in the time entries themselves to privileged matters or work product, and (3) wire transfer information. ECF No. 241-6 at ¶¶ 6-9. Mr. Haveles' declaration also offers this Court the opportunity to review the unredacted time entries *in camera*. *Id.* at ¶ 7. I do not find that review to be necessary.

It is true that a Court may deduct hours from the time billed if it finds that the billing entries are so heavily redacted that it cannot discern the legal services provided. *Meyrowitz v. Brendel*, No. 16-81793-CV, 2018 WL 4440492, at *6 (S.D. Fla. Sept. 17, 2018) (J. Matthewman) (citing *Tiara Condo. Ass'n, Inc. v. Marsh USA, Inc.*, 697 F. Supp. 2d 1349, 1367 (S.D. Fla. 2010). However, like the Court in *Meyrowitz*, I do not find that the time entries in this case are unacceptably vague or too heavily redacted as to warrant a deduction. A review of the work log shows many entries that do contain some redaction, however, I find these redactions to be in keeping with Local Rule 7.3(a) and do not find the redaction to be so pervasive as to impede any meaningful review. Thus, I do not find it appropriate to deduct those hours from the total time billed.

23

f.   Rounding of Time to the Nearest Half or Whole Hour

Finally, CityPlace argues that the Trustee's fees should be reduced due to Mr. Haveles'

practice of rounding his hours to the nearest hour or half hour in approximately 74% of his time

entries. ECF No. 243 at 20-21. To support this claim, CityPlace produced a chart to show the total

number of Mr. Haveles' entries per invoice in comparison to how many of his entries per invoice

end in a .5 or .00. ECF No. 243-1 at 82. Ms. Chesley's declaration also points out that in addition

to the disproportionate number of entries ending in .5 or .00, out of Mr. Haveles' 387 entries, there

are no entries ending in .4 or .9 *Id.* at ¶ 22. The Trustee denies such intentional practice by Mr.

Haveles of rounding up to the nearest half hour or hole hour and points to Mr. Haveles' declaration

in which he states that, in fact, his practice is to round his hours down. ECF No. 244-1 at ¶ 6.

CityPlace is correct that caselaw supports a reduction of fees when time entries exhibit

rounding even to the nearest half-hour. *See George v. GTE Directories Corp.*, 114 F. Supp. 2d

1281, 1292–93 (M.D. Fla. 2000) (hours reduced by 30% where billing was primarily in half hour

and quarter hour increments). In *George*, out of the seventy time entries in the billing statement

submitted by the fee-seeking party, sixty-eight of them were listed in half-hour increments. *Id.* at

1292. The Court found that pattern and practice to be unacceptable. *Id.* ("Such inadequate

documentation does not provide the Court with sufficient evidence to determine the amount of

time actually spent on particular tasks. Moreover, it results in a substantial windfall to Plaintiff's

counsel."). While only 74% of Mr. Haveles' time entries were billed by the whole or half hour

(compared to the 97% in *George*), the fact that a large majority of entries were billed this way

cannot be ignored.[10]

---

[10] To be clear, I do not find any improper motive by Mr. Havales to "pad" his billing; nevertheless,
for the reasons stated, the objective evidence supports this factor as a reason to reduce the lodestar.

For the foregoing reasons, an across-the-board reduction of attorney hours by 20% is justified. "If a court determines that the number of hours is unreasonably high, there are two recognized methods available to the court to reduce the amount of attorneys' fees: "it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." *Grasso v. Grasso*, 2016 WL 8716273, at *4 (M.D. Fla. Oct. 21, 2016) (quoting *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008). Particularly where the invoices supporting a fee application are voluminous, courts have the discretion "to utilize a simple across-the-board reduction by a certain percentage as an alternative to line-by-line reductions." *Project Vote v. Blackwell*, 2009 WL 917737 *6 (N.D. Ohio 2009). *See also Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994) ("Where fee documentation is voluminous . . . an hour-by-hour review is simply impractical and a waste of judicial resources."). The Court will not endeavor in this Order to conduct an hour-by-hour analysis of almost two years of billing statements. *Bivins*, 548 F.3d at 1350. Rather, based on the factors discussed above, a 20% across-the-board reduction of the Trustee's hours is justified. *See MKT Reps*, 2013 WL 1289261, at *11 (court reduced fee award by 20% to account for various inappropriate billing practices such as block billing, excessive billing, and excessive time spent on tasks).

### 3. <u>Reasonable Hours: Paralegal and Other Support Staff Hours Shall be Reduced by Varying Percentages</u>

a. <u>Paralegal Time Shall be Reduced by 20%</u>

The general rule regarding work performed by paralegals is that where the work performed is that normally performed by an attorney, paralegal time may be included as part of an award of attorney's fees. *See Missouri v. Jenkins*, 491 U.S. 274, 285 (1989); *Jean v. Nelson*, 863 F.2d 778-780 (11th Cir. 1988). However, "work that is clerical or secretarial in nature is not separately recoverable." *Id.* In *Fox v. The Marquis Corp.*, 2010 WL 1010871 (S.D. Fla. March 15, 2010),

25

Judge Cohn found that the time spent on matters such as telephone conferences, exchanging e-mails with opposing counsel, and telephone conferences with the expert were all reasonable and compensable. Therefore, the paralegal time spent on these types of legal matters will be awarded, but not for "performing clerical functions such as organizing files, copying documents, checking the docket, updating files, checking court dates and delivering papers." *See also For Play Limited v. Bow to Stern Maint., Inc.*, No. 05-22002-Civ, 2006 WL 3662339, at *7 (S.D. Fla. Nov. 6, 2006) (finding these clerical functions non-compensable); *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 553 (7th Cir. 1999)("The relevant inquiry for requested paralegal fees is whether the work was sufficiently complex to justify the efforts of a paralegal, as opposed to an employee at the next rung lower on the pay-scale ladder.")(citation omitted).

I find that much of the work performed by the six paralegals was of a substantive nature in that they analyzed and reviewed filings and evidence, prepared trial exhibits, and helped the attorneys with substantive deposition preparation. Nevertheless, I agree with CityPlace's argument that there are many entries where it was difficult to determine whether the paralegals' time was spent performing substantive legal work because many of the time entries are overly vague or are block billed. *See, e.g.* ECF No. 241-3 at 195 (on September 18, 2019, Ms. Mahecha billed 13.5 hours for "[w]ork on preparation for trial"); *see also id.* at 305 (on June 5, 2020, Ms. Monestime billed 6.8 hours for ten separate tasks described in a single block entry); *see also id.* at 160 (on July 22, 2019, Ms. Mahecha billed time for "[f]ollow up work regarding 7/19 filing"). "Follow up work" could be anything from making a phone call, to printing a document, to drafting a legal memorandum; without more information, it is impossible to determine whether entries such as these are for legal or administrative work. I also note some entries in which a paralegal billed for time spent organizing and updating files. *See e.g., Id.* at 156, 196. *See Fox*, 2010 WL 1010871, at

*7 ("paralegal fees for performing clerical functions . . . are not compensable") (citation omitted). In light of the numerous vague entries, use of block billing, and instances of billing for administrative work, I will reduce the paralegals' time by 20%. *See Brown Jordan Int'l, Inc. v. Carmicle*, No. 14-60629-CV, 2017 WL 5633312, at *6 (S.D. Fla. Aug. 7, 2017) (J. Hopkins) (reducing paralegal time by 50% to account for clerical work); *Shabazz v. Pinnacle Credit Servs. LLC*, 2016 WL 6892948, at *6 (D. Colo. Nov. 23, 2016) (applying a 20% reduction to account for inappropriately charging for clerical tasks).

> b. Document Clerk Time Shall be Excluded

I will exclude the 172.5 hours entered by document clerks Cuthbert (21), Joy (149), and Sharkey (2.5) for extracting documents, organizing files, packing boxes of exhibits, organizing binders, and the like. ECF No. 241-3 at 78, 121, 250. That work is purely clerical or secretarial work presumably subsumed in the rates charged by the attorneys. *See United States v. Sleep Medicine Center*, Case No. 3:12-cv-1080-J-39PDB, 2016 WL 11567785, at *11 (M.D. Fla. August 23, 2016) (citing *Richlin Sec. Serv. Co. v. Chertoff*, 553 U.S. 571, 582–83 (2008)). The Trustee has not offered enough evidence to support the contention that reimbursement for clerical work is justified here.

> c. Librarian Time Shall be Excluded

I will exclude the 4.7 hours entered by librarian Proffitt. The work log indicates that Proffitt spent those 4.7 hours performing "internet research". ECF No. 241-3 at 80 and 83. The log is silent as to whether the research was legal in nature, and since time spent by support staff is only reimbursable to the extent that they are performing work traditionally performed by an attorney (*Nelson*, 863 F.2d at 778), I decline to award the librarian's 4.7 hours of non-legal research.

> d. Research Services Time Shall be Awarded in Full

I will award the 1 hour entered by "research services" staff member Hoffman. The work log indicates that Hoffman billed time for "[l]ocat[ing] examples of Judge Rosenberg's bench trial judgments for Tim Farina." ECF No. 241-3 at 289. This task is legal in nature and is work that is traditionally performed by an attorney in preparation for a trial or hearing. *Jean v. Nelson*, 863 F.2d at 778. Thus, the Trustee will be awarded the above-stated fee for Hoffman's 1 hour of work.[11]

### e. Discovery Services Time Shall be Reduced by 30%

This Court notes the importance of discovery personnel in assisting with litigation, especially in a case as lengthy as this. However, much like the paralegals' time, the Trustee should not be compensated for time their discovery staff spent performing administrative tasks because such secretarial or clerical tasks are subsumed in the attorneys' rates. *Richlin Sec. Serv. Co.*, 553 U.S. at 582–83. The work log provides several instances, to which Plaintiff has objected (ECF No. 243-3), of a discovery assistant billing for a task that is administrative. *See e.g.* ECF No. 241-3 at 130 (on June 9, 2019, Navarro spent 2.5 hours "[c]onvert[ing] specified electronic documents to PDF format in chronological order for case team review, per J. Moreira"); *id.* at175 (on August 20, 2019, Farma billed .9 hours to "[p]repare PDF versions of specified documents, per L. Mahecha"); *id.* at 176 (on August 21, 2019, Farma billed .4 hours to "[p]repare PDF versions of specified documents, per J. Moreira"); *id.* at 216 (on October 14, 2019, Heitz billed 1 hour to "[p]repare iPad's for use at trial, per A. Stio and C. Fritsch"). To account for this inappropriate charging for clerical tasks, I will reduce the discovery personnel's 255 hours by 30%.

### f. Project Assistant Time Shall be Reduced by 40%

CityPlace objects generally to all of Roth's time entries that "contain a vague description of discovery work, including 'document review,' 'privilege review,' 'quality control review,' or

---

[11] It is also worth noting that CityPlace did not object to Hoffman's time entry.

'prepare privilege log.'" ECF No. 243-3 at 2. For the same reasons stated above, this Court agrees

with CityPlace regarding the time entries for document review and quality control review, which

this Court estimates accounts for about forty percent of the 390 hours Roth billed. ECF Nos. 241-

2, 241-3. Thus, I decline to award the Trustee those hours. Mr. Roth spent the remaining 234 hours

conducting privilege reviews or preparing the privilege log. ECF No. 241-3. I find those hours to

be compensable because it is legal in nature. *See Kimberly-Clark Corp. v. Factory Mut. Ins. Co.*,

No. 3:05-CV-2097, 2009 WL 1958998, at *7 (N.D. Tex. Apr. 30, 2008) (awarding fees for time

entries consisting of "review privilege documents," "prepare privilege log," and "review and revise

privilege log"). Thus, Roth's time will be reduced by 40% to account for the time entries consisting

solely of administrative work.

### 4. **Lodestar Amount**

| Attorney/Paralegal/Support Staff | Reduced Hourly Rate | Reduced Hours[12] | Fees Awarded |
|---|---|---|---|
| Senior Partner Mr. Haveles | $675 | 1285.76 | $867,888 |
| Junior Partners Mr. Stio and Mr. Readlinger | $500 | 806.36 | $403,180 |
| Senior Associates Mr. Healy, Ms. Sherman, and Ms. Martin | $400 | 762.48 | $304,992 |
| Mid-level Associates Ms. English-Mezzino, Mr. Moreira, Ms. Puccio, Mr. Farina, and Ms. Khandhadia | $350 | 1798.72 | $629,552 |
| Junior Associate Mr. Scher | $300 | 266.72 | $80,016 |
| Discovery attorneys Ms. Fritsch, Mr. Slear, Mr. Rowe, and Ms. Adams | $225 | 438.16 | $98,586 |
| Senior Paralegals Ms. Bala, Ms. Mahecha, and Ms. Monestime, | $150 | 334.56 | $50,184 |
| Junior Paralegals Ms. Reeder, Ms. Fleming, and Ms. Tencza | $125 | 22.24 | $2,780 |

---

[12] Since I will not consider any fees associated with time spent on appellate work, before any percentage cut was made, I eliminated the following time which the work log indicates was spent on appellate matters: Mr. Haveles – 19.8 hours, Mr. Farina – 24.8 hours, and Ms. Khandhadia – 12.5 hours. ECF No. 241-3 at 297–312.

| Discovery services personnel Farma, Alexander, Cawley, Keller, Navarro, Pettiford, Heitz, Catanzariti, and Kwon | $100 | 178.85 | $17,855 |
|---|---|---|---|
| Research services personnel Hoffman | $100 | 1 | $100 |
| Project Assistant Roth | $50 | 234 | $11,700 |
| **TOTAL FEES AWARDED** | | | **$2,466,833** |

## IV.   REASONABLE EXPENSES

The Trustee seeks reimbursement for $305,575.79 in non-taxable costs. ECF No. 241 at 19. The Trustee provided this Court with an expense log setting forth the nature of these expenses. ECF No. 241-2 at 3.

The prevailing party is "entitled to recover all reasonable costs pursuant to the *applicable contract . . .*" *See* S.D. Fla. L.R. 7.3(a)(6); *MKT Reps*, 2013 WL 1289261, at *7 (emphasis added). Here, the applicable contract is Section 10.13 of the Loan Agreement, which allows the Lender (here, the Trustee) to recover "all reasonable costs and expenses." ECF No. 241-1 at 114–15. The Trustee argues that reimbursement is not limited to taxable costs because Section 10.13 of the Loan Agreement does not contain any language limiting reimbursement to costs that are taxable under 28 U.S.C. §1920. ECF No. 241 at 18–19. Once again, I agree with the reasoning in *MKT Reps* in which Judge O'Sullivan found that, based on the language of the parties' contract, the prevailing party was entitled to an award of "all resulting costs and expenses," even those beyond the scope of 28 U.S.C. § 1920. *MKT Reps*, 2013 WL 1289261, at *3. Here, as was the case with the contract in *MKT Reps*, the plain language of the contract advises that the parties did not intend to limit reimbursable costs to those taxable under 28 U.S.C. §1920. However, although the Trustee is entitled to recover costs, those costs must be (1) reasonable and (2) accompanied by sufficient supporting documentation. S.D. Fla. L.R. 7.3(a)(6); *MKT Reps*, 2013 WL 1289261, at *7 ("The

defendant is entitled to recover all reasonable costs pursuant to the applicable contract, but this Court may disallow costs for which no supporting documentation is provided.").

CityPlace acknowledges that the Trustee is entitled to expert costs (although disagreeing with the amount requested), but argues that the litigation costs and travel expenses are altogether non-compensable because the Trustee failed to provide this Court with sufficient supporting documentation. ECF No. 242 at 22. I find this to be partially true and will address each set of costs separately.

    1.  **The Trustee Shall Recover $143,579.45 in Litigation Costs**

The Trustee requests a total of $159,026.17 for litigation costs such as costs associated with data base research, ediscovery processing and document hosting, and costs associated with court filings including postage, messenger services and copying. ECF No. 241-2 at 3. Typically, a party may not recover costs for express mail, facsimile transmissions, travel expenses and expert witness fees under 28 U.S.C. § 1920. *See MKT Reps*, 2013 WL 1289261, at *6 (citing *Tang How v. Edward J. Gerrits, Inc.*, 756 F. Supp. 1540, 1545–46 (S.D.Fla.1991)). The Eleventh Circuit has held that "general copying, computerized legal research, postage [and] courthouse parking fees ... are clearly not recoverable" under 28 U.S.C. § 1920. *Duckworth v. Whisenant*, 97 F.3d 1393, 1399 (11th Cir.1996). Reimbursement for costs associated with postage, computerized research, long distance phone calls, and federal express, are not expressly permitted under 28 U.S.C. § 1920, and generally should not be awarded for a request for costs under 28 U.S.C.1920. However, in this case, pursuant to the Loan Agreement, the Trustee is entitled to recover reasonable litigation costs outside of what would be compensable under 28 U.S.C. § 1920.

Having reviewed the Trustee's supporting materials and CityPlace's objections, I find that, with the exception of "miscellaneous" costs and "professional fees and expenses", the Trustee's

requested litigation costs are reasonable. This was a nineteen-month litigation involving extensive discovery and substantial motion-practice, taking and defending thirteen depositions, and attending a number of hearings and settlement conferences before ultimately defending an eight-day bench trial. Predictably, the Trustee incurred significant costs and expenses associated with litigating this lawsuit. *See Graves v. Plaza Med. Ctr, Corp.*, No. 1:10-23382-CV, 2018 WL 3699325, at *12 (S.D. Fla. May 23, 2018) (J. Louis) (finding fee claimant's litigation costs to be reasonable and necessarily incurred where litigation was lengthy and extensive).

CityPlace argues that there is a lack of detailed documentation regarding the litigation costs, which warrants a total denial of reimbursement for these fees. ECF No. 243 at 17. I agree with CityPlace's argument regarding the costs labeled "miscellaneous." *Id.* at 241-2 at 3. The work log fails to shed any light on the reason Trustee spent $2,496.72. Similarly, the work log fails to provide any information regarding the one-time charge of $12,950 for "professional fees and expenses." ECF No. 241-3 at 260. Without more information regarding what kind of professionals were being hired or why, I cannot agree that the Trustee has met its burden of justifying the expense. Indeed, the Trustee is entitled to recover costs and expenses, but they must be reasonable and factually supported. Without any evidence regarding what this cost is attributed to, I cannot find it to be reasonable and justified. Thus, I find the miscellaneous fees of $2,496.72 and the professional fees of $12,950 to be non-compensable. Regarding the remaining litigation costs, I disagree with CityPlace and find there is sufficient documentation, particularly in the invoices found at the end of each bill, to support an award. It is not necessary for the party seeking fees to provide a receipt of every transaction for which they seek reimbursement. *Graves*, No., 2018 WL 3699325, at *12 ("The lack of certain invoices is not fatal to Relator's claim for costs."); s*ee also United States ex rel. Beaujon v. Plaza Health Network*, 12-20951-CV (S. D. Fla. Nov. 25, 2015)

(J. Moreno). As such, I find that the Trustee is permitted to recover for litigation costs in the requested amount of $143,579.45.

**2.  The Trustee Shall Recover $72,985.64 in Expert Costs**

The Trustee seeks $72,985.64 for expert fees ($3,033.14 in expert expenses and $69,952.50 in expert time). ECF No. 241-3 at 315–325. The expert, Ted Whitmer, charged at an hourly rate of $450. *Id.* The invoices provided by the Trustee show the specific tasks he completed such as researching, reading depositions, writing and submitting a report, preparing for and attending a deposition, and finally preparing for and testifying at trial. *Id.* CityPlace does not object to reimbursing the Trustee for expert costs, but does contest the amount, noting in their Response that the invoices add up to a total compensable time of $68,435.64 instead of the requested $69,952.50. ECF No. 243 at 17. I have reviewed the invoices provided by the Trustee and based on my own calculations, find that contrary to what either party argues, the invoices mathematically support a request for $70,402.50. Thus, it appears that the Trustee is actually seeking less than what their billing records indicate they are owed. The Trustee should not be penalized for either their unintentional miscalculation or intentional decision to remove excessive fees of which I am unaware. I find the requested $69,952.50 in expert time and $3,033.14 in expert expenses to be compensable.

**3.  The Trustee Shall Recover $190 in Meals and Travel Expenses**

The Trustee seeks reimbursement for travel expenses in the amount of $59,571.67 and reimbursement for meals in the amount of $13,992.31. Although there is no mention of meals and travel expenses under 28 U.S.C. § 1920 and they are generally not permissible, these costs are permissible under the Loan Agreement if they are reasonable. "[A] fee applicant seeking to recover expenses incurred for retaining non-local counsel generally 'must show a lack of attorneys

practicing in that place who are willing and able to handle his claims.'" *See Martinez v. Hernando County Sherriff's Office*, 579 Fed. Appx. 710, 714 (11th Cir. 2014) (quoting *Barnes*, 168 F.3d at 437). In *Martinez*, the Eleventh Circuit upheld the district court's decision to exclude travel hours for non-local counsel stating that although the Court fully respected Plaintiff's right to retain counsel of his choice, "we do not think it reasonable to pass the costs of [Plaintiff's counsel]'s travel on to the [Defendant] without a showing of a lack of local counsel." *Martinez*, 579 Fed. Appx. at 714. *See also Graves*, 2018 WL 3699325, at *12.

The Trustee has made no showing that there was a lack of local counsel willing and able to take on this case. I have already found that these counsel exist.[13] Like the Eleventh Circuit, I respect the Trustee's right to hire any counsel they so choose, whether they be local or not, but CityPlace should not bear the burden of that choice absent a showing that it was unavoidable due to a lack of local counsel up to the task. I will, however, award travel and meal expenses that would have been incurred even by local counsel. *Graves,* 2018 WL 3699325, at *12, n. 13. The "travel expense" listed on the invoice at the end of the individual bills is silent as to the specifics surrounding the travel (i.e. who is traveling, where they are traveling to, and for what purpose). *See e.g.* ECF 241-3 at 227. The same can be seen for general charges for "meals" with no information regarding why these meals are being charged to the client. *See e.g. id.* at 60. In reviewing the work log in detail, I found travel to and from New York and West Palm Beach referenced in a few of Mr. Havales' time entries, which is to be expected, but non-compensable nonetheless. *See e.g. id.* at 175–76. There is, however, a reference in Mr. Stio's October 11, 2019,

---

[13] To the contrary, the Trustee states in their Response that it "does not dispute that there are countless attorneys in the District who might be willing and able to take on a case of this magnitude and level of sophistication." ECF No. 244 at 5.

billing entry to "travel to Berkadia." *Id.* at 215.[14] The total travel expenses for month of October 2019 were $6,762.41, which includes travel from New York to Florida and back. Thus, because there is no detail regarding the expenses associated solely with Mr. Stio's trip from New York to Pennsylvania, and keeping in mind the short distance, this Court will estimate the expense of this trip at $150.[15] Similarly, on February 21, 2019, Ms. English-Mezzino traveled to and from Berkadia to conduct in-person interviews. *Id.* at 39. Ms. English-Mezzino is based in Princeton, New Jersey, a mere one-hour drive to Berkadia.[16] I find that $40 in travel expenses (including one meal) for Ms. English-Mezzino's trip is compensable. Thus, of the $73,563.98 in meals and travel expenses requested, $190 is compensable. The remaining $73,373.98 is non-compensable.

## CONCLUSION

Based on the foregoing, the Trustee's Motion for Attorneys' Fees and Costs [ECF No.241] is **GRANTED IN PART AND DENIED IN PART**. Plaintiff shall reimburse the Trustee as follows:

|  |  |
|---|---|
| Attorneys' Fees: | **$2,466,833** |
| Expenses: | **$216,755.09** |
| **TOTAL FEES AND COSTS:** | **$2,683,588.09** |

---

[14] Berkadia Commercial Mortgage is located in Ambler, Pennsylvania. *See id.* at 268. According to Google Maps, Ambler, Pennsylavnia is about a two-hour drive from New York City.

[15] This estimate relies on a 200-mile round trip, plus tolls and one meal. *See https://www.irs.gov/newsroom/irs-issues-standard-mileage-rates-for-2019* (IRS standard mileage rate for 2019 was .58 per mile)

[16] According to Google Maps, Ambler, Pennsylvania is 41.8 miles from Princeton, New Jersey.

**DONE AND ORDERED** in Chambers this 11th day of January, 2021 at West Palm Beach

in the Southern District of Florida.

_____
BRUCE REINHART
United States Magistrate Judge